# SUPREME COURT

OF THE

## STATE OF MISSOURI

APRIL TERM, 1903.

---

(*Continued from Volume 175.*)

## UNDERWOOD et al., Appellants, v. CAVE.

Division Two, June 9, 1903.

1. **Wills: RULES OF CONSTRUCTION.** Rules for the construction of wills are: first, the intention of the testator must be ascertained from the whole instrument; second, the words used must be understood in the sense indicated by the whole instrument; third, where the words used create an absolute estate that estate will not be cut down to a less estate by ambiguous words, inferential in their intent; and, fourth, where an absolute estate is granted in one clause of a will, such grant can not be impaired, cut down or qualified in a subsequent clause except by words as affirmatively strong as those which create the absolute estate.

2. ———: ———: **FEE SIMPLE: ABSOLUTE LIFE ESTATE: POWER OF DISPOSAL: UNAMBIGUOUS LIMITATION.** The testator, after giving and dedicating one acre of ground to a cemetery, in the second clause of his will said: "I give and bequeath unto my wife the residue of my lands," and then by a subsequent clause added: "It is my will that my property, real and personal, hereby bequeathed to my wife shall be hers absolutely during her natural life to use and enjoy as she may see proper, and at her death, if there should be anything left, my will is that it be vested and applied to the

use of the Lone Jack Baptist Church, used as may be thought most conducive to the advancement of the Christian religion." *Held*, first, that the word "absolutely" does not enlarge the estate devised, but simply means that the estate given to the wife is to be used and enjoyed by her unlimited by any conditions; second, the words used in the last clause are not "ambiguous or inferential in their intent," but are a clear and explicit limitation on the absolute grant contained in the second clause; third, the will created a life estate in the widow; fourth, the words, "shall be hers absolutely during her natural life to use and enjoy as she may see proper," are very strong and emphatic language, and not only gave her the right to use and enjoy the property as it then was, but created in her the power of disposing of the same, since it was made "hers absolutely."

3. ———: POWER OF DISPOSAL: EXERCISE. Where the life tenant is given the power of disposal, deeds by the life tenant which disclose that they are for a valuable consideration and undertake to convey the estate in fee, sufficiently indicate an exercise of that power, and convey to the grantee whatever title the testator had, and not merely the life estate of the life tenant.

4. **Conveyances:** MISTAKE IN DESCRIPTION: SUFFICIENCY OF EVIDENCE. Mere general declarations by witnesses that the property was sold and the purchaser took possession, and that the grantor included land he did not own and did not include land he did own, are not sufficient to correct a mistake in the description of the land. That evidence is material, but it should be supplemented by the testimony of the scrivener, and declarations or requests of the grantor as to the property intended to be conveyed, or, in the absence of such testimony, other facts and circumstances should be introduced in evidence.

5. **Decree:** SUFFICIENCY. A decree which undertakes to correct a mistake in a deed, and is to take the place of that deed in the chain of title, should be full and specific as to the correction, and is not sufficient if it simply grants "the prayer of the cross-bill" and adjudges the title to be in certain persons.

Appeal from Jackson Circuit Court.—*Hon. E. P. Gates,* Judge.

AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.

*John N. Southern* and *John A. Sea* for appellants.

(1)   The entire will must be read in order to get the meaning of the testator and all of its provisions must be taken together.   Sec. 4650, R. S. 1899; Schorr v.

Carter, 120 Mo. 409; Morrison v. Thistle, 67 Mo. 598; Brian v. Garrison, 150 Mo. 655.   (2)   The second and fourth clauses of the will, read together, as they must be, no right or power to sell the real estate is given Malinda Underwood to convey any title greater than a life estate in said land.   Schorr v. Carter, supra; Evans v. Folkes, 135 Mo. 397; Bromwell v. Cole, 136 Mo. 201; Pease v. Pilot Knob Co., 49 Mo. 124; Martindale on Conveyances, p. 139.   (3)   No right to sell by reason of a power to sell is claimed for Malinda Underwood by defendant, anywhere in the case.   No power to sell is given by the will of Malinda Underwood.   The words "shall be hers absolutely during her natural life, to use and enjoy as she may see proper, and at her death, if there be anything left, it shall be vested in the Baptist Church," do not contain a power to sell the real estate, especially when it is shown that $1,040.28 of personal property remained hers after administration.   Bromwell v. Cole, 136 Mo. 201; Bremell v. Adams, 146 Mo. 70; Scheidt v. Crecelius, 94 Mo. 324; Lewis v. Pitman, 101 Mo. 381; Evans v. Folkes, 135 Mo. 408.   (4)   The term "absolutely" does not imply the power of disposal in connection with the other words relied on by defendant for that power.   1 Am. and Eng. Ency. of Law (2 Ed.), p. 208; McMillan v. Farrow, 141 Mo. 63; Biggins v. McClelland, 28 Mo. 29; Smith v. Bell, 6 Pet. 63.   (5) "To use and enjoy as she may see proper" do not confer a power of sale, but negative such power.   Owen v. Ellis, 64 Mo. 77; Owen v. Sentger, 51 Mo. 322; Biggins v. McClelland, 28 Mo. 20; Turner v. Timberlake, 53 Mo. 371; Pease v. Pilot Knob Co., supra.   (6)   The specific execution of a power to sell land can not be ordered and adjudged on parol testimony.   Owen v. Ellis, supra; Sugden on Powers, sec. 88.

*Johnson & Lucas* for respondent.

(1)   Let us notice the condition of the testator at

the time of the execution of the will and of his death: He had no children, and the absence of any reference to brothers and sisters, or their descendants, indicates that the sole object of his bounty was his wife, with the desire that if at her death any part of the estate, "real" or "personal," remained, then it might be given to the church of which he was a member. Effect must be given to the intention of the testator. He seemed to have in mind and at heart two objects of bounty: first, and over and above all, his aged wife, and, second, after her death, as to anything that she may not have used in her lifetime, the residue of the estate, whether great or small. The gift was, take it absolutely as yours; use it as you will and if at your death any part thereof remains, the church shall have the same. Chew v. Keller, 100 Mo. 362; Small v. Field, 102 Mo. 127; Balliett v. Veal, 140 Mo. 189; Rothwell v. Jamison, 147 Mo. 613; Cross v. Hoch, 149 Mo. 335; Burford v. Aldridge, 165 Mo. 423. The last case cited in the language used in the will more nearly parallels the case at bar than others. Under the statute she was entitled by virtue of her homestead rights to 160 acres in fee, and the husband out of his affection gave to her all the land, with a direction that if anything remained at her death it should go to the Baptist church. There were no children, and the plaintiffs do not seem to have been in the affection of the testator. The testator was a farmer; the will was drawn by one unversed in legal knowledge, and when in the subsequent part of the will, he directed that the property "shall be hers absolutely during her natural life to use and enjoy as she may see proper, and at her death if there should be anything left my will is that it be vested and applied to the use of the Lone Jack Baptist Church," it must be clearly understood that no intention existed on his part to limit the estate or restrict the use and disposition thereof. And this appears equally clear in its relation to real as well as personal property. (2) Conceding for the sake of

argument that some doubt might exist as to the giving of a fee, then there can be no serious question that an estate with the power of disposal was given to Malinda Underwood. Always remembering that the intention of the testator is to govern and control the construction of the instrument, we should keep in mind the fact that the gift in the second clause is unlimited, and, unless qualified by language of an affirmative character, creates a fee, and not a life estate. If the power of disposal be not necessarily implied, then why should the term "absolutely" be used therein, and the doubt implied if anything should be left? Unlike other cases that may be cited, the clause of the will now under consideration does not treat the property as that of the testator, but as that of the wife, and this clause is at the most only the expression of a wish on the part of the testator that if there should be anything left it should go to the Baptist church. Green v. Sutton, 50 Mo. 186; Evans v. Folkes, 135 Mo. 403; Davis v. Kirksey, 37 S. W. 994; Burford v. Aldridge, 165 Mo. 425. The case of McMillan v. Farrow, 141 Mo. 63, is of the class of cases where the remainder is spoken of as the property of the testator. The case of Brammell v. Cole, 136 Mo. 210, and Brammell v. Adams, 146 Mo. 70, and other cases cited by appellants, in nowise militate against the position of respondent, but on the contrary affirm the position of respondent herein. And the cases cited, Scheidt v. Crecelius, 94 Mo. 324; Lewis v. Pitman, 101 Mo. 281; and Evans v. Folkes, 135 Mo. 408, clearly show the distinction between the case at bar and those cited. We unhesitatingly aver that every question presented by this record was fully considered and determined in favor of this respondent, in Burford v. Aldridge, 165 Mo. 425; Hurst v. Von De Veld, 158 Mo. 246; Clotilde v. Lutz, 157 Mo. 445. (3) An estate in fee can not be impaired, cut down or limited by a subsequent clause, unless the testator has declared such to be his intention. Chew v. Keller, 100 Mo. 362; Small v. Field, 102 Mo.

104; Jones v. Brown, 68 Me. 34; Barth v. Barth, 38 S. W. 511. (4) The estate was a homestead, and under the law the title thereto vested in the widow, on the death of her husband, who died in August, 1871. Sec. 5, p. 450, G. S. 1865; Brown v. Brown, 68 Mo. 390; Case v. Mitzenberg, 109 Mo. 311; Goode v. Lewis, 118 Mo. 365; Linville v. Hartley, 130 Mo. 256.

FOX, J.—This is an action in ejectment for the recovery of certain lands in Jackson county. The answer tenders the general issue, invokes the statute of limitations, prays for a reformation of the description as to a part of the land and a decree in accordance therewith. The reply denies the new matter in the answer. On the issues thus joined, trial was had, and the finding and decree were for defendant as prayed in the answer. In due time motion for new trial was filed, overruled and the case brought here by appeal. The whole issue is embraced in the construction of the will of James F. Underwood, deceased, the common source of title.

The following stipulation was introduced in evidence on the part of the plaintiff:

"Come the parties hereto and file stipulations as follows:

"1. That the plaintiffs are heirs of James F. Underwood.

"2. That James F. Underwood is the common source of title to the property in controversy.

"3. That the said James F. Underwood died testate in the year 1871, and Noah Hunt and his widow, Malinda Underwood, qualified and were duly appointed executors of his last will and testament.

"4. That said last will and testament was admitted to probate in the probate court of Jackson county, at Independence, on the —— day of July, 1871, and was re-probated on the —— day of ——, 1899, in same court.

"5. That said last will and testament may be admitted as testimony in this cause.

"6.　That Malinda Underwood lived in and occupied the residence where her husband died, until her decease in 1897.

"7.　That Malinda Underwood received from herself and her co-executor Noah Hunt, the balance found to be due the estate at the final settlement thereof, to-wit, the sum of $1,040.28.

"8.　That said Malinda Underwood claimed the real estate in controversy, under and by virtue of the said last will and testament of the said James F. Underwood.　But if she had any other title thereto defendants are not debarred by this stipulation from asserting the same."

Following this, there was testimony introduced by plaintiffs as to the rental value.　This was all the testimony on the part of the plaintiff.

Defendant introduced certified copy of the will of James F. Underwood, deceased.　As the vital questions involved in this controversy are in respect to the proper construction of this will, we here quote it:

"Know all men by these presents, that I, James F. Underwood, of the county of Jackson, and State of Missouri, being in feeble health but of a sound and disposing mind, and not knowing the day of my death, do make and publish this, my last will and testament, in manner and form following, to-wit:

"First.　I give and bequeath and donate to the Underwood family one acre of ground as a cemetery or burying ground, the said one acre being what is now known and which I wish to be known as the Underwood Cemetery or Burying Ground, to hold and belong to the said family forever, with this understanding, that Johnson Stultz and James Sanders, with their families, may and shall have the privilege of burying any of their dead in said burying ground.

"Second.　I give and bequeath unto my wife, Malinda Underwood, the residue of my lands, or so much

thereof as may remain undisposed of at the time of my death, to-wit:

"The southeast quarter of the southeast quarter of section 7; the southwest quarter of the southeast quarter of section 21, except the one acre already mentioned; the south half of the northwest quarter of the southeast quarter of the same section; the south half of the southwest quarter of the same section; and the northwest quarter of the northeast quarter of same section; and the northeast quarter of the northwest quarter of section 28, all in township 47, range 29, containing in all 259 acres more or less. I also give and bequeath to my wife, said Malinda, all my personal estate of every kind remaining undisposed of at my death, after my debts, funeral expenses and other expenses required by this, my will, or by the laws of the land have been satisfied.

"Third. I give and bequeath further eight hundred dollars to be applied as follows: that is to say, I desire my executors pay the said eight hundred dollars into the hands of my nephew, James W. Underwood, to be by him held in trust and the interest thereof to be used by him annually in repairing, keeping in order, taking care of and ornamenting the burying ground mentioned in this will, and at his death the said fund to go into the hands of some other member of the Underwood family, to be used in the same way.

"Fourth. It is my will that the property, real and personal, hereby bequeathed to my wife shall be hers absolutely during her natural life to use and enjoy as she may see proper and at her death, if there should be anything left, my will is that it be vested and applied to the use of the Lone Jack Baptist Church, used as may be thought most conducive to the advancement of the Christian religion.

"Fifth. I hereby appoint and name as executors of this, my will, my wife, Malinda Underwood, and Noah Hunt.

"In witness whereof, I have hereunto set my hand and seal this 28th day of January, in the year of our Lord eighteen hundred and sixty-nine," etc.; properly executed and witnessed.

Deeds were introduced from Malinda Underwood, the widow of deceased, to part of the land in controversy; also, deed from Malinda Underwood to W. H. Cave, and from W. H. Cave and wife to defendant.

W. H. Cave and J. J. Frank were introduced as witnesses, who testified generally as to the land sold by Malinda Underwood to defendant. This was substantially all the evidence in the cause.

The plaintiffs requested the court to declare the law as follows:

"The court declares the law to be as applied to the construction of the will of James F. Underwood, as follows:

"1.　That under and by virtue of the provisions of said will, Malinda Underwood took only a life estate in the lands devised.

"2.　That by her deeds to defendant and to his grantor of the land in controversy Malinda Underwood conveyed to them only her life estate in said property.

"3.　That under the stipulations and the facts in testimony, Malinda Underwood elected to take under the will of James F. Underwood and not under the provisions of the homestead law. And although the court sitting as a jury may find that Malinda Underwood was entitled in fee simple to part of all the lands set out in plaintiff's petition, under and by virtue of the homestead law, yet if it further find that James F. Underwood devised all lands owned by him to said Malinda Underwood by his last will and testament and she elected to take and hold such land under and by virtue of the will of said James F. Underwood and not under the homestead law in force at the time of his death, then the court declares the law to be that defendant can not have any interest in said lands under said homestead law

but must take under the provisions of the said will of James F. Underwood.''

The court gave instruction or declaration of law numbered 3 as asked by plaintiffs, and refused to give instruction or declarations of law numbered 1 and 2 asked by plaintiffs. To which action and ruling of the court in refusing to give instructions numbered 1 and 2, and each of them, plaintiffs by their counsel then and there duly excepted.

The court at the request of defendant gave the following instructions or declarations of law:

''1. On the pleadings and evidence the plaintiffs can not recover.

''2. Under the will of James F. Underwood, deceased, Malinda Underwood was authorized to sell and convey the property in controversy, and the deeds from her to the defendant, conveyed the title to the defendant herein.

''3. The court declares the law to be that the defendant is entitled to a decree for the property omitted to be conveyed or misdescribed in the deed from Malinda Underwood to himself, and a decree will be rendered therefor.

''4. Under the will of James F. Underwood, deceased, Malinda Underwood took a fee simple title to the premises in dispute, and the defendants are entitled to a decree herein as prayed in their cross-bill.''

Upon the submission of the case, the court found the issues for the defendant and entered the following decree:

''Now at this day this cause coming on for hearing on the original petition of the above-named plaintiffs and on the cross bill of the above-named defendants against the above-named plaintiffs and the unknown heirs of James F. Underwood, deceased, and all the parties having been duly served with process herein, both on the original petition and cross-bill, and all and singular the matters in controversy are

submitted to the court, who, after hearing the evidence and argument of counsel, doth find:

"That at the time of the death of James F. Underwood, deceased, he was the owner of the following described lands in Jackson county, Missouri, to-wit: the southwest quarter of the southeast quarter, and the south half of the southwest quarter, and the south half of the northwest quarter of the southeast quarter, of section twenty-one, township forty-seven, range twenty-nine, and is the equitable owner of said last described tract of land. That the plaintiffs and the unknown heirs of James F. Underwood, deceased, have no right, title, or interest to any part of the land in controversy, and the defendant is the owner of all the same, and entitled to a decree vesting the title to said premises in him free from any claim on the part of any of the parties above named, as prayed for in his answer and cross-bill herein. It is therefore ordered, adjudged and decreed that plaintiffs take nothing by their petition filed herein, and that the prayer of the answer and cross-bill of the defendant be granted, and he is decreed to be the owner and the legal holder of the title to all the property herein, to-wit: The southwest quarter of the southeast quarter, and the south half of the southwest quarter, and the south half of the northwest quarter of the southeast quarter of section twenty-one, township forty-seven, range twenty-nine, Jackson county, Missouri, ———— is hereby vested fully and effectually in the said Jesse M. Cave free from any claim, right or title on the part of the other parties to this proceeding and that the said Jesse M. Cave have and recover of the plaintiffs, J. W. Underwood, Besse Lawrence, F. M. Lawrence, Elizabeth Henley, John A. Underwood, Thomas N. Underwood, James A. Yankee, Samuel Yankee, Permelia McGlathery, Samuel C. McGlathery, Eliza D. Maxwell, and William N. Maxwell his costs in this behalf laid out and expended and that he have execution therefor."

The questions as presented by this record, that of construing the language of a last will, are difficulties which have frequently attracted the attention of this court. The propositions involved in its construction are:

First.    Do the terms of the will create an estate in fee or simply a life estate?

Second.    If the will creates simply a life estate, does the language coupled with it create the power of disposal?

These propositions must be determined by the application of the well-settled rules of construction.

Section 4650, Revised Statutes 1899, very clearly announces the rule that should govern the courts in the construction of last wills. It provides: "All courts and others concerned in the execution of last wills shall have due regard to the directions of the will, and the true intent and meaning of the testator, in all matters brought before them."

In the case of McMillan v. Farrow, 141 Mo. 55, BURGESS, J., speaking for the court, says:

"The cardinal rule in the interpretation of a will is that the intention of the testator, as gathered from the whole instrument, shall control, and in arriving at such intention the relation of the testator to the beneficiaries named in the will, and the circumstances surrounding him at the time of its execution, may be taken into consideration," citing Noe v. Kern, 93 Mo. 367; Long v. Timms, 107 Mo. 512; Schorr v. Carter, 120 Mo. 413; Drake v. Crane, 127 Mo. 85; Nichols v. Boswell, 103 Mo. 151.

The very recent case of Roth v. Rauschenbusch, decided by GANTT, J., at the October term, 1902, of this court, 173 Mo. 582, emphatically approves of the rule announced in the case of McMillan v. Farrow, supra, and then says: "Another canon for the construction of the words of a will is that when the words of a will at the outset clearly indicate a disposition in the testa-

tor to give the entire interest, use and benefit of the estate devised, absolutely, to the first donee, that estate will not be cut down to a less estate by subsequent or ambiguous words inferential in their intent."

In Chew v. Keller, 100 Mo. 362, BLACK, J., speaking for the court, says:

"We here mention, as guides, some of the established rules of construction. The first, and to which the others are aids, is that effect should be given to the intention of the testator, and the words used are to be understood in the sense indicated by the whole instrument."

In the last case cited, there is another rule announced, as to the force and effect of separate clauses in a will. The court says:

"An estate in fee created by a will can not be cut down or limited by a subsequent clause, unless it is as clear and decisive as the language of the clause which devises the real estate," citing Freeman v. Coit, 96 N. Y. 63; Byrnes v. Stillwell, 103 N. Y. 453; Landon v. Moore, 45 Conn. 422.

Judge SHERWOOD, in Small v. Field, 102 Mo. 127, in discussing section 4004, Revised Statutes 1879, now section 4646, Revised Statutes 1899, said: "Under this statute it is obvious that the absolute estate in fee granted to Mrs. Kate Greene, could not be impaired, cut down or qualified except by words as affirmatively strong as those which conveyed the estate to her. Such has been the ruling upon similar statutes elsewhere."

To the same effect is the case of Yocum v. Siler, 160 Mo. 281, and the recent case of Roberts v. Crume, 173 Mo. 572.

The foregoing cases clearly indicate the views of this court upon the rules to be applied to the construction of wills. The language of this will, as to the nature of and character of estate conveyed, must be interpreted in accordance with the rules announced.

To sum up the rules of construction as applicable

to the will involved in this controversy, we find: first, that the intention of the testator must be ascertained from the whole instrument; second, the words used are to be understood in the sense indicated by the whole instrument; third, that the force and effect of terms devising an absolute estate, will not be cut down to a less estate by ambiguous words, inferential in their intent; and, fourth, that where an absolute estate is granted in one clause of the will, such grant can not be impaired, cut down or qualified in a subsequent clause, except by words as affirmatively strong as those which conveyed the estate.

This leads us to the application of these rules to the terms of this will as written in the second and fourth clauses of said instrument. The second clause says:

"I give and bequeath unto my wife, Malinda Underwood, the residue of my lands, or so much thereof as may remain undisposed of at the time of my death." Then follows the description of the land. This clause standing alone, there would be no difficulty in reaching a conclusion. It is clearly apparent that this language, without any modification, would grant an estate in fee; but applying the rule heretofore referred to, in ascertaining the intent of the testator, we must look to the whole instrument. We must then look to and determine the effect the language in clause four has upon the terms as contained in clause two. In the latter clause, it says:

"It is my will that my property, real and personal, hereby bequeathed to my wife, shall be hers absolutely during her natural life to use and enjoy as she may see proper, and at her death, if there should be anything left, my will is that it be vested and applied to the use of the Lone Jack Baptist Church, used as may be thought most conducive to the advancement of the Christian religion."

We are now simply confronted with this proposition: Under the rules heretofore mentioned, are the

terms as used in clause four so "ambiguous and inferential in their intent" as not to impair or qualify the grant in clause two?

We are unable to detect any ambiguity in the language used in clause four of this will. It is a clear and explicit limitation of the grant contained in the second clause of the will. It simply states that the property bequeathed shall be hers, absolutely, during her natural life, to use and enjoy as she may see proper. The term *"absolutely"* does not enlarge the estate; it must be construed as applying to the estate granted by the express words. In other words, it means that her life estate, and the use and enjoyment of the property, shall not be limited by any conditions.

We are of the opinion that the language used in clause four, which limits the estate to the term of "her natural life," is equally strong; in fact, stronger than the language used in clause two, containing the grant; hence, apply the rule as heretofore mentioned (that the language used, modifying or qualifying the absolute grant, must be of equal force as the terms making the grant), and we find that the terms used, limiting the grant to a life estate, is in harmony with this rule.

That the testator only intended to create a life interest, is manifest from the express words used, and if additional support was needed to verify this intention, we would then point to the concluding paragraph of clause four, which says:

"If there should be anything left, my will is that it be vested and applied to the use of the Lone Jack Baptist Church, used as may be thought most conducive to the advancement of the Christian religion."

In the case of Evans v. Folks, 135 Mo. 397, the language used in the will in that case was in some respects similar to that used in the will before us, and the court said in that case:

"By the third clause of the will the testator gave

to his wife, Mrs. Eliza J. Evans, all of his estate, both real and personal, absolutely to the use of her own interest during her natural life, and if at her death there should be any of either of the personal or real estate mentioned in the will it was to be divided among his blood relations as specified therein. This clearly shows that the testator only intended to give to Mrs. Evans a life estate in his property. . . . This position finds support in the fact that it was provided by the will that, if there should be any of the property left at the death of Mrs. Evans, it should be divided among the blood relations of the testator, which is very persuasive evidence, at least, that he only intended to give to her a life estate in the property in question."

We have reached the conclusion that this will only created a life estate in Malinda Underwood.

This brings us to the last proposition: Do the terms of this will creating a life estate couple with it the power of disposal?

The testator used this language in creating this life estate: "It is my will that the property, real and personal, hereby bequeathed to my wife shall be hers *absolutely* during her natural life, to use and enjoy as she may see proper." This language is very strong— "shall be hers absolutely during her natural life"—is, in effect, saying during her natural life she possesses all the elements of ownership, which includes the power of disposal. While it may be said that the other terms, to use and enjoy the property as she may see proper, limited her power to the use and enjoyment of the property as it was, yet when we consider the preceding words that it was to be *"hers absolutely,"* to use and enjoy as she might see proper, we have the use of emphatic terms. When we consider such terms as applicable to the sole object of his bounty, they meant something more than the simple use of the property as it stood. If it was "hers absolutely during her natural life, with the full right to enjoy it, as she might see proper"

doubtless it was contemplated that she had all the powers, in respect to such property, that the language used, "hers absolutely," would imply.

In the case of Burford v. Aldridge, 165 Mo. 419, the following language was used in the creation of the estate:

"I will, devise and bequeath to my beloved wife, Sarah, all of my property, personal, real and mixed, that may be left after paying the above bequests, to use and manage as she may deem best as long she may live; and at her death I desire and so will, that what may be left of my estate after her death shall be divided equally between my two brothers, Emsley Wharton and John G. Wharton, and my sister, Eliza Plummer, and my brother-in-law, D. W. Burford."

In commenting on this language in the will, Judge VALLIANT says: "But under this will the widow was entitled to consume as much of the estate as she desired, the body as well as the product. And on the other hand, if she had lived within the rents and interest and left a surplus of that, there is at least room for contention that such surplus would not have gone to her administrator on her death, but to the remainderman under the will. Therefore, whilst she was in a sense a trustee of the property for the use of the remaindermen, yet she had a very substantial interest in it and the remaindermen could not call her to account or restrict her in amount in what she chose to expend for her own gratification, even though it consumed the whole estate, as long as good faith was preserved."

An examination of the case of Bramell v. Cole, 136 Mo. 201, upon which appellants chiefly rely to maintain their contention that the language as contained in this will is not sufficient to confer the power of disposal on Mrs. Underwood, convinces us that it is not applicable to the broad and emphatic language used in the will before us.

Vol 176 mo—2

Again, it must be remembered, that it is rare that you find two wills using the same language and the testator surrounded by the same conditions.

In the construction of the language of this will, as to its sufficiency in granting a power of disposal, we must look to the circumstances surrounding the testator at the time of the execution of the will. There were no children, his wife was the sole object of his bounty, and as was said by MARSHALL, J., in the case of Cross v. Hoch, 149 Mo. l. c. 338-339: "We must seek admittance into the family circle and learn the relations and feelings of the testator towards each of the beneficiaries of his bounty." When we come to apply this rule as a test to the language used in the will before us, we find it is quite dissimilar to the facts and conditions disclosed by the record in the Bramell-Cole case, supra.

We have reached the conclusion that in view of the relation and feeling of James F. Underwood to his wife, Malinda Underwood, she being the sole object of his bounty, and the use of the broad and emphatic terms —"should be hers absolutely during her natural life" —the will in this case not only created a life estate, but coupled with it the power of disposal.

The deeds introduced in evidence disclose that they were for a valuable consideration and undertake to convey the estate in fee. We take it that this sufficiently indicates that she was exercising the powers granted by the will and we are of the opinion that defendant acquired title to so much of the land as is properly described in these deeds in such conveyances. In the case of Owen v. Ellis, 64 Mo. 77, Judge NAPTON, in a very able opinion, reviews all the authorities upon this subject, and finally reaches the conclusion, in which he says: "We think it very doubtful if any reference to the power was necessary in this case, as the manifest intention was to convey a fee simple; but, without so determining, we have no hesitation in declaring that

very slight circumstances would justify an application of the deed to the power, and not to the estate (for life) which the grantor had."

The defendant in his answer asks the court to correct a mistake in one of the deeds executed by Malinda Underwood. The averments in the answer upon that subject are as follows:

"That by error in one of the deeds of conveyance from the said Malinda Underwood to the defendant, to-wit, a deed of conveyance of the date of May 24, 1889, said Malinda Underwood undertook and intended to convey to this defendant the north half of the southeast quarter of the southwest quarter, and south half of the northwest quarter of the southeast quarter of section twenty-one, in township forty-seven, range twenty-nine, but by mistake in the draughtsman, or on the part of the draughtsman of the said deed, the same was made to read: the north half of the southeast quarter of the southeast quarter, and the south end of the northwest quarter of the southeast quarter of said section, township and range; that said Malinda Underwood did not own or have at the time of making such deed, or at any time prior thereto, any right, title or interest in the land sold, described as the north half of the southeast quarter of the southeast quarter, but was the owner of the north half of the southeast quarter of the southwest quarter of said section, and by said deed intended to convey the same to the defendant. That said Malinda Underwood was the owner of the north half of the northwest quarter of the southeast quarter of said section, and by said deed intended to convey said land. . . . Wherefore defendant prays that, being remediless at law, the court may by order and decree adjudge that the said deed from the said Malinda Underwood to this defendant may be corrected so as to read: The north half of the southeast quarter of the southwest quarter of section twenty-one, township forty-seven, range twenty-nine, instead of the

north half of the southeast quarter of the southeast quarter of said section, and the south half of the northwest quarter of the southeast quarter of section twenty-one, township forty-seven, range twenty-nine, instead of the south end of the northwest quarter of the southeast quarter of said section.''

The testimony offered in support of this issue, was that of W. H. Cave and J. J. Franks; with the additional circumstance of embracing in the deed, property she did not own, and leaving out a portion that she did own. While this testimony is very material and entitled to careful consideration as tending to show a mistake in the deed executed by Mrs. Underwood; yet we are of the opinion, to warrant the decree correcting the mistake, there should be some testimony supplementing that introduced, which points to the mistake in the deed.

It must be noted that this affirmative relief sought in the answer is not for a specific performance of a contract of sale; but is asking the correction of the instrument which evidences a sale already consummated. There should be some testimony applicable to the instrument sought to be corrected. This usually consists of the testimony of the scrivener who prepared the deed; declarations or requests of the grantor, as to the property intended to be conveyed. In the absence of such testimony, other facts and circumstances should be introduced indicating to the reasonable satisfaction of the court, that a mistake in fact was made in the preparation of the instrument.

Upon the retrial of this issue, the testimony of William Cave and Franks should be supplemented with testimony that there was a mistake in the deed which was executed to consummate the sale that the witnesses refer to. Mere general declarations by witnesses that the property was sold and the purchaser took possession, is not of itself sufficient to authorize the court to correct a mistake in a deed. We repeat, it is not

the sale that is sought to be enforced; but it is to supply the evidence of it. In the trial of this case, the term *mistake* is never used or referred to, except in the answer.

As this cause, so far as this particular issue is involved, is to be retried, will say, that the form of the decree in this cause is objectionable, for the reason its terms do not fully accomplish what is sought by the prayer for relief in the answer. This decree is absolutely silent as to the correction of any mistake; it should be responsive to the issue presented, as this decree, in the chain of title to this land, is to take the place of the erroneous deed; hence, the decree should be full and specific as to the correction. It does not comply with the requirements of a proper decree to simply vest the title in the defendant, as prayed for in the answer and cross-bill; the decree should show upon its face what is done, without referring those who may be investigating the title, to what was prayed for in the answer and cross-bill. The law as declared by the court, and its finding upon this particular issue, was erroneous.

It is unnecessary to discuss the statute of limitations as disclosed in this case. Malinda Underwood was holding under the will of James F. Underwood and not by virtue of the homestead law. She had only a life estate by virtue of the will, and she did not die until 1897, hence, the statute of limitations is not applicable to the facts of this case.

It follows from what has been said, that the judgment of the trial court, as to the land correctly described and contained in the deeds of Malinda Underwood, be affirmed, and that said judgment be reversed and the cause remanded for a new trial, in accordance with the views as herein expressed, as to the land not embraced in those deeds and not correctly described. All concur.