## PATRICK F. GRACE, Appellant, v. PERRY et al.

**In Banc, June 20, 1906.**

1. **WILL: Interpretation: Rule.** The controlling rule in constru-
ing wills, to which all technical rules of construction must
give way, is to give effect to the true intention of the testator
as the same may be gathered from the whole instrument, if
not violative of some established rule of law; and in arriving
at that intention, the relation of the testator to the benefi-
ciaries named in the will and the circumstances surrounding
him at the time of its execution are to be taken into considera-
tion, and the will read as near as may be from his standpoint,
giving effect, if possible, to every clause and portion of it, and
to that end, if need be, words may be supplied or omitted, and
sentences transposed.

2. ———: ———: ———: **To Children and the Heirs of Their
Bodies: Cross-Remainders.** An old man possessed of a consider-
able property, with a wife and two children aged eight and ten
years, gave by will, drawn by himself without the aid of coun-
sel, the homestead to his wife and validated an antenuptial
agreement which provided an annuity to her of $800, and then
proceeded: "All the residue of my estate, personal and mixed,
I give and devise equally to my children, James S. Dougherty
and Augusta Lucy Dougherty, during their natural lives, res-
pectfully, with remainder to their heirs or his or her heirs of
their body, but with full power and authority to each of my
said children after their majority to dispose of the absolute
title, and on the death of either the survivor to inherit. But
should both my children die without issue of their body, then
my grandnephew, Charles F. Loker, shall inherit all my
property." *Held,* that the leading and dominant idea of this
residuary clause is that the residue of his estate was to go
to his children in equal shares for life, with full power in each
of them after reaching majority to dispose of his or her share
of the estate in fee simple; *second,* the balance of the clause is
meant to provide for a devolution of those shares in case of
the death of the children or either of them before they arrive

at their majority or before they had disposed of their shares; *third*, it was the evident intention of the testator that the remainders limited upon the respective life estates given to the two children were subject to the power given the children to dispose of their shares absolutely; and, *fourth*, the execution of the power of disposal by one of them after he reached his majority, defeated the remainder in his heirs, and conveyed to the grantee the absolute title.

3. ——: **Remainder: Power of Disposal.** A power of disposition of the fee added to a life estate is not repugnant to the life estate or to the remainder over. If not exercised, it leaves both estates unaffected by it. If exercised, it defeats the remainder in the property disposed of.

4. ——: **Power of Disposition: General Sale: Mortgage.** Generally a power to sell does not include a power to mortgage, but a "full power and authority to dispose of the absolute estate in fee simple title," is general and unhampered as to the mode of disposition, and gave to the donees authority to either sell, or mortgage.

5. ——: ——: **Reference to Power In Deed.** Where the power was to dispose of "the absolute estate in fee simple," and by the deed the donee conveyed "the absolute estate in fee simple," it will be held that the deed was made in execution of the power.

Appeal from St. Louis City Circuit Court.—*Hon. Wm. Zachritz*, Judge.

REVERSED AND REMANDED.

*McKeag & Cummings* for appellant.

The power of disposal vested in James S. Dougherty, Jr., of his interest in the property is unlimited at his discretion, and the very fact that he added to the words which make the deed convey a fee simple title the words ''the absolute estate in fee simple title in and the undivided half of,'' etc., plainly shows that it was not his life interest he intended to dispose of, but his absolute estate in fee simple in this deed of trust; he gives full power and authority upon condition that these notes specified in the deed of trust are not paid to sell

all he had mortgaged and convey a fee simple title to the purchaser, which was accordingly done, and James S. Dougherty nor his wife, nor any other person claiming through him, is raising any objection to this sale or to the plaintiff's title to the one undivided one-half of the property described. Campbell v. Johnson, 65 Mo. 439; Wead v. Gray, 78 Mo. 64; Boyer v. Allen, 76 Mo. 498. The word used in this will, "dispose," is much broader than the word "sell." There is no limitation to the manner of disposal nor precedent conditions; that was discretionary with James S. Dougherty, Jr. He used that discretion and no court will interfere, and, as we have already stated, he nor no one claiming under him is asking for the intervention of the court. We submit he could convey as a gift, mortgage, sell outright or give a power of attorney to sell and convey, or direct and empower a trustee upon a certain contingency, such as in the deed of trust in the record, upon the failure to pay the notes described therein, to sell and convey, which was done and executed in this instance — by making a conveyance of the fee simple title by the trustee. Phelps v. Harris, 101 U. S. 380; Fling v. Goodall, 40 N. H. 219; Ryland v. Bank, 151 Mo. 8.

*J. L. Minnis, amicus curiae.*

(1) The manifest intention of the testator as expressed in his will was to devise to each of his children a life estate in the undivided one-half of the residue of his estate, with power to dispose of the fee to such half after attaining majority, and the remainder to the survivor for life with like power contingent on the death of the other without issue, but if both children have issue, then with remainder to such issue *per stirpes;* if only one of the children has issue, with remainder to such issue; but if both of the children die without issue, then with remainder on the death of the survivor to Loker. Of course, the remainders are contingent on

the failure of the children to exercise the power to dispose of the fee. (2) There are no legal obstacles to the enforcement of the will, as thus interpreted. (3) The power to dispose of the fee vested in the first takers included the power to revoke the devise to the issue of the first takers and to the grandnephew. 4 Kent, p. 360; 1 Sug. on Powers (3 Am. Ed.), p. 288, sec. 8. (4) The devise to the issue of the first takers, and on failure of such issue, to the grandnephew, is an estate limited in default of the exercise of the power given to the first takers. 2 Sug. on Powers (3 Am. Ed.), p. 29, sec. 3, and p. 184, sec. 1. (5) The question is no longer debatable in this State. Russell v. Eubanks, 84 Mo. 82; Harbison v. James, 90 Mo. 411; Lewis v. Pitman, 101 Mo. 281; Greffet v. Willman, 114 Mo. 106; Evans v. Folks, 135 Mo. 397; Underwood v. Cave, 176 Mo. 1; Garland v. Smith, 164 Mo. 1.

*P. A. Griswold* for respondent, Augusta Lucy Dougherty Perry.

(1) The appointment of Thomas M. Grace as trustee in lieu of Mauvais did not comply with the conditions set forth in the deed of trust under which appellant claims and hence was void. Perry on Trusts, sec. 287; Guion v. Picket, 42 Miss. 77. (2) Plaintiff cannot excuse his failure to offer in evidence at the trial a certain quit-claim deed from Dougherty to Grace, on the ground that the decision of the court a month aftewards was a surprise to him. Fretwell v. Laffoon, 77 Mo. 30; Boyce v. Mooney, 40 Mo. 106; Hanley v. Blanton, 1 Mo. 49; 3 Graham and Waterman on New Trials, pp. 874-944. (3) Plaintiff cannot lug into this case, as newly-discovered evidence, a deed which he had in his possession at the trial and failed to offer, by attaching same to a motion for a new trial. State v. Soper, 148 Mo. 240; State v. Miller, 144 Mo. 30; State v. McLaughlin, 27 Mo. 111, citing the rule stated in Berry v. State, 10

Ga. 527. (4) Plaintiff has no grievance because the trial court admitted his evidence subject to defendants' objection. The party whose objection was held in suspense might complain but not his adversary. (5) Where the grantor has an estate that will pass without execu-, ting the power, and the instrument does not contain a particular reference to the power, the law will presume that he intended to convey such estate, and no more. Pease v. Iron Co., 49 Mo. 127; 1 Sugden on Powers, 356, note 1; 2 Washburn on Real Property, sec. 1717; 4 Kent's Com., p. 335. (6) The power of disposal created by the words "with full power and authority to dispose of the absolute estate in fee simple title" did not confer on defendant, Dougherty, the power to mortgage his estate, but should be construed as a power to sell. Matter of Hesdra, 2 Connoly 519; Lessee of Williams v. Veach, 17 Ohio 181; Hunt v. Hunt, 11 Nev. 449; Stokes v. Payne, 58 Miss. 618; Matter of Davids, 5 Dem. 16; Matter of Davids, 5 Dem. 254; Sires v. Sires, 43 S. C. 271. (7) Power to sell does not include a power to mortgage. Price v. Courtney, 87 Mo. 395; Wood v. Kice, 103 Mo. 329; Farwell on Powers, p. 457; 2 Washburn on Real Property, sec. 1690; 4 Kent's Com. p. 331; 1 Jones on Mortgages, sec. 129. (8) Where the courts have enlarged the meaning of the word "dispose" they have done so in order to effectuate a transaction which was equivalent to a sale out and out. Phelps v. Harris, 101 U. S. 380; Fling v. Goodall, 40 N. H. 219. (9) In the execution of a power the law requires strict compliance with the terms of the donor, and especially will this be true of a power to cut out remaindermen, as in the case at bar. Garland v. Smith, 164 Mo. 15; Price v. Courtney, 87 Mo. 391; 2 Washburn on Real Prop., sec. 1688; Tiedeman on Real Property, sec. 567. (10) The office of a deed of trust is not to alienate land, but to create a lien thereon, and is wanting in all the essential elements of alienation. Dougherty did not "dispose of the absolute estate in fee simple title," when

he executed this deed of trust; he simply created a lien upon the land.   Dickerson v. Bridges, 147 Mo. 243.

*Nagel & Kirby* also for respondent, Augusta Lucy Dougherty Perry.

(1)   In the construction of a will all parts of the will must be read together, in the light of the surrounding circumstances and with the purpose of ascertaining who were intended to be the objects of the testator's bounty.   His intentions thus disclosed will be made effective unless they contravene some fixed rule of law. Underwood v. Cave, 176 Mo. 12; McMillan v. Farrow, 141 Mo. 55; Meiners v. Meiners, 179 Mo. 626; McCulloughs, Admr. v. Anderson, 7 L. R. A. (Ky.) 840.   (2) A power of disposition added to a life estate is not repugnant either to the life estate or to the remainder over.   If not exercised it leaves both estates unaffected by it.   If exercised, it defeats the remainder in the property disposed of, — the remainder being subject to such defeat.   Rubey v. Barnet, 12 Mo. 3; Gregory v. Cowgill, 19 Mo. 415; Bryan v. Christian, 58 Mo. 98; Reinders v. Koppelmann, 68 Mo. 482; Russell v. Eubanks, 84 Mo. 82; Harbison v. James, 90 Mo. 411; Gavin v. Allen, 100 Mo. 293; Lewis v. Pitman, 101 Mo. 281; Evans v. Folks, 135 Mo. 397; Buford v. Aldridge, 165 Mo. 419; Underwood v. Cave, 176 Mo. 1; McCulloughs, Admr. v. Anderson, 7 L. R. A. (Ky.) 836; St. L. Brew. Assn. v. Fueller, 182 Mo. 93; Hoxie v. Finney, 147 Mass. 616; Roberts v. Lewis, 153 U. S. 367; Dickey v. Barnstable, 98 N. W. 368; Hamlin v. U. S. Exp. Co., 107 Ill. 443; Hovey v. Walbank, 100 Cal. 193; Clark v. Middlesworth, 82 Ind. 240; Stuart v. Walker, 72 Me. 145; Wiley v. Gregory, 135 Ind. 647; Collins v. Wickwire, 162 Mass. 143; Hemhauser v. Decker, 38 N. J. Eq. 426.   (3) When a power of disposal is beneficial, i. e., is given to a donee with intent that he may, by exercising it, benefit himself, it is more liberally construed in his favor than when

it is a mere power in trust. Russell v. Eubanks, 84 Mo. 89; McCulloughs, Admr. v. Anderson, 7 L. R. A. (Ky.) 840; Sweeney v. Warren, 127 N. Y. 426; In re Hesdra, 2 Connoly, 514; Williams v. Veach, 17 Ohio 171; Cain v. Cain, 29 So. 846. (4) A general power may be exercised in favor of the donee or his creditors. The powers given by the Dougherty will were beneficial and general, and therefore included a power to give away, and to mortgage. Russell v. Eubanks, 84 Mo. 89; Ross v. Rauschenbusch, 173 Mo. 589; 22 Am. and Eng. Ency. Law (2 Ed.), 1098, 1133; Simpkins v. Bales, 98 N. W. 580; King v. Warren, 32 Beav. 111; Hicks v. Ward, 107 N. C. 392; Degman v. Degman, 98 Ky. 717; Holt v. Hogan, 5 Jones Eq. 82 (58 N. C. 82); Shank v. Dewitt, 44 Ohio St. 237; Mut. Life v. Everett, 40 N. J. Eq. 346; In re Linzces Sett., 23 Beav. 241; 2 Washb. on Real P. (4 Ed.), 659; Williams on Real P. (17 Ed.), 439; 1 Sugden on Powers, 514; Farwell on Powers, 67. (5) The words "to dispose of," when not qualified or limited by the context, have no technical or limited meaning, and therefore give an untrammeled power of disposition. Andrew v. Auditor, 5 Ohio (N. P.) 128; U. S. v. Gratiot, 39 U. S. (14 Pet.) 526; Phelps v. Harris, 101 U. S. 370; Stokes v. Payne, 58 Miss. 614; Fleming v. Mills, 182 Ill. 464; Garland v. Smith, 164 Mo. 1; Love v. Pamplin, 21 Fed. 755; Hefferich v. Hefferich, 21 Week. L. B. 313; Tower v. Hartford, 115 Ind. 186; Higginson v. Kerr, 30 Ont. 62; Beard v. Knox, 5 Cal. 256. (6) The decree in the Worden case (at bar), was erroneous in not declaring and decreeing the interest of the parties to the deed of trust. R. S. 1899, sec. 4386.

*Thomas P. Bashaw* and *Alexander Young* for respondent Charles F. Loker.

BRACE, C. J.—This is a suit for partition of a lot of ground in Block 208 E., in the city of St. Louis, fronting thirty feet on the west line of Thirteenth street

and running westwardly that width to the east line of Centre street; of the undivided one-half of which the plaintiff, in his petition, claimed to be the owner as tenant in common in fee simple with the defendants.

The judgment was for the defendants, and the plaintiff appeals.

Since the case has been pending in this court, the plaintiff has died, and the case has been revived in the names of Thomas L. M. Grace, Margaret M. Grace, executors and trustees, and William L. Grace, a trustee under the will of the said Patrick Grace.

The case made is this:

James S. Dougherty died testate, seized of the land in question, leaving a widow and two children, to-wit, James S. Dougherty and Augusta Lucy Dougherty, who has since intermarried with John W. Perry. His will is as follows:

"I, James S. Dougherty, of St. Louis, Mo., being of sound and of deposing mind, do make, publish and declare the following as my last will and testament, to-wit:

"First: I direct all my debts justly due to be paid.

"Second: I give and devise to my wife my residence and furniture for sole use and the use of my children for and during her natural life, and such other interest in my estate as the law will allow, and may be allowed according to the within or attached contracts. All the residue of my estate, personal and mixed, I give and devise equally to my children, James S. Dougherty and Augusta Lucy Dougherty, during their natural lives, respectfully, with remainder to their heirs or his or her heirs of their body, but with full power and authority to each of my said children after their majority to dispose of the absolute estate in fee simple title, and on the death of either the survivor to inherit. But should both my children die without issue of their body, then and in that event my grandnephew, Charles F. Loker, shall inherit all my property.

"I appoint Melvin L. Gray and James R. Loker executors of this my last will.

"In testimony whereof, I have hereunto set my hand and seal this 5th day of April, 1878.

"James S. Dougherty.   (Seal.)

"Subscribed, sealed and declared by the above-named J. S. Dougherty as and for his last will and testament in our presence and in the presence of each other herewith subscribing our names as attesting witnesses thereto this 5th day of April, 1878.

"J. C. Page.

Thomas J. Henley.

Thos. P. Miller."

"The within or attached contracts" mentioned in the body of the will constituted an antenuptial contract whereby he charges his estate with an annuity of $800 in favor of his wife during her widowhood.

On the 14th of February, 1898, the widow released to her son, James S. Dougherty, all her right, title, interest and claim in and to the property in controversy. Afterwards, on the 5th of March, 1898, the said James S. Dougherty and wife executed a deed of trust of that date conveying "the absolute estate in fee simple title in and to the undivided half" of said lot to a trustee to secure the payment of a principal note for $1,250 and two interest notes for $43.75 each, payable to the said Patrick F. Grace. The debt secured was not paid, the deed of trust was duly foreclosed and the said Grace became the purchaser of the premises at the price of $1531.75, received the trustee's deed therefor, and thereupon instituted this suit, averring that the land cannot be partitioned in kind and asking that it be sold and he be given one-half of the proceeds.

The defendants are Augusta Lucy Dougherty Perry and her husband; James S. Dougherty, the grantor in the deed of trust; William Lyons, who held a second mortgage on the premises executed by the said James S. Dougherty, which also covered other land;

and Charles F. Loker, the grandnephew of the testator. Of these only Mr. and Mrs. Perry answered, their answer being in effect a general denial of the material allegations of the petition, with a specific averment that "Plaintiff is only entitled to a life estate in an undivided one-half interest in said real estate."

On the trial the defendants *inter alia* offered in evidence the deed of trust and trustee's deed aforesaid, and at the close of the case the court excluded these deeds and entered judgment for the defendants, thereby holding that the plaintiff acquired no interest whatever by virtue of these deeds. To determine whether the trial court was right or not, in so holding, it becomes necessary to ascertain in the first place what interest in and power over the land in question was acquired by the said James S. Dougherty by the will of his father, a question to be determined by a proper construction of the residuary clause of his will.

I.   The controlling rule in construing wills in this State, to which all technical rules of construction must give way, is: to give effect to the true intent and meaning of the testator as the same may be gathered from the whole instrument, if not violative of some established rule of law; and in arriving at that intention, the relation of the testator to the beneficiaries named in the will and the circumstances surrounding him at the time of its execution are to be taken into consideration, and the will read as near as may be from his standpoint, giving effect, if possible, to every clause and portion of it, and to this end, if need be, words may be supplied and omitted, and sentences transposed. [R. S. 1899, sec. 4650; Brooks v. Brooks, 187 Mo. 476; Dozier v. Dozier, 183 Mo. 137; Meiners v. Meiners, 179 Mo. 614; Simmons v. Cabanne, 177 Mo. 336; Underwood v. Cave, 176 Mo. 1; Cross v. Hoch, 149 Mo. 325, and cases therein cited.]

The evidence in this and the cognate case submitted with it, tends to prove that at the time of the

execution of the will the testator was an "old gentle-man" possessed of "considerable property." That his family consisted of himself, his wife and two minor children, James S. and Augusta Lucy, aged, respectively, about eight and ten years.

It is conceded, and we think it is evident on the face of the instrument, that it was the intention of the testator by the last clause to devise all the residue of his estate, real as well as personal and mixed.

It is manifest on the face of the will that it was written *inops consilii* and probably by the testator himself, who by the same token was neither a lawyer nor a scholar. It is inartificially drawn, defective in orthography and grammar, and to its interpretation must be brought good common sense rather than artificial or technical rules of construction either grammatical or legal. Evidently a man of good sense but of limited education, he was doubtless moved to its preparation by the usual motives that induce the execution of a last will and testament in view of approaching death, his leading purpose being to make provision for those who were dependent upon him, and upon whom his affections naturally centered. These were his wife and his two infant children. His main purpose as to his wife having been accomplished by a ratification of his antenuptial contract with, and an additional devise to her; by the residuary clause in question, he sought to accomplish his main purpose as to his children. In it they were the special objects of his bounty. They were the persons he had in mind and for whose benefit this residuary clause was written, the leading and dominant idea of which is, that the residue of his estate is to go to them in equal shares for life with full power in each of them after their majority to dispose of his or her share of the estate in fee simple absolute. The remainder of the clause is devoted to providing for a devolution of these shares in case of the death of the children

or either of them before they arrived at their majority, or before they had disposed of their shares.

As might have been expected of one of his limited accomplishments, not well versed in the technical meaning of legal terms, the language he uses for the purpose is not always aptly chosen, but it seems clear enough that his meaning, rendered broadly in everyday English, is that, if one of his children should die without issue before he or she arrived at the age of majority or before he or she had disposed of his or her share, the share of the one so dying should go to the other, and if both died without issue before the happening of these contingences, then the grandnephew should take the estate, and in the case of the death of either with issue, the issue should stand in the shoes of the parent, and the grandnephew should get nothing. For the purposes of this appeal it is, perhaps, unnecessary to trace the course of that devolution more definitely, for when James S. Dougherty executed the deed of trust aforesaid he had attained his majority, and the crucial question in this case is, could he then execute the power given him in the will so as to defeat the remainders limited upon his life estate, subject to that power, it evidently being the intention of the testator that they should be so subject?

But as it will be necessary finally to determine the interest of the defendant, Augusta Lucy Dougherty Perry, in the premises, a formal construction in appropriate legal terms is called for. None better could be given than that found in the brief of J. L. Minnis, Esq., *Amicus Curiae,* as follows:

"The manifest intention of the testator as expressed in his will was to devise to each of his children a life estate in the undivided one-half of the residue of his estate, with power to dispose of the fee to such half after attaining majority, and the remainder to the survivor for life with like power contingent on the death of

197 Sup.—36

the other without issue, but if both children have issue, then with remainder to such issue *per stirpes;* if only one of the children has issue with remainder to such issue; but if both of the children, die without issue, then with remainder on the death of the survivor to Loker. The remainders contingent on the failure of the children to exercise the power to dispose of the fee.''

Is there any established rule of law that will defeat the intention of the testator as thus expressed? For the defendant it is contended that there is, in that, the power to dispose of the fee to their respective shares given to the testator's children must be rejected because repugnant to the disposition of the fee by the testator himself to the heirs of the first taker, and in the case of the failure of such heirs to the grandnephew of the testator. This contention cannot be maintained. It must be remembered that the devise is express for life with power to dispose of the fee, and it is a well-settled principle of law that a power or disposition added to a life estate is not repugnant to the life estate or to the remainder over. If not exercised it leaves both estates unaffected by it. If exercised, it defeats the remainder in the property disposed of; the remainder being subject to such defeat, as in this case. [24 Am. and Eng. Ency. Law (2 Ed.), 449; Russell v. Eubanks, 84 Mo. 82-88, and cases cited; Harbison v. James, 90 Mo. 411; Gaven v. Allen, 100 Mo. 293; Lewis v. Pitman, 101 Mo. 281-291; Greffet v. Willman, 114 Mo. 106; Evans v. Folks, 135 Mo. 397-403; Garland v. Smith, 164 Mo. 1; Underwood v. Cave, 176 Mo. 1; St. Louis L. & B. Assn. v. Fueller, 182 Mo. 93.]

The rule is thus stated in 24 Am. and Eng. Ency. of Law (2 Ed.), 449: ''A limitation after a life estate contingent upon alienation by the life tenant is valid, and a life estate may be given with the power of disposal or appointment superadded, and an executory limitation in default thereof will be good,'' and in a

foot note at the bottom of the page, cases from England, the Supreme Court of the United States and from twenty-two States are cited.

In Russell v. Eubanks, 84 Mo. 82, the will gave to Julia Ann Williams an estate for life, with power to sell and dispose of the property as she pleased, with remainder to Frances Ellen and Henrietta Gregg Robinson. The court said:

"The effect of this added power of disposition, if exercised by her, it may be conceded, would have been to carry the fee, and thus cut off the remainder. But it was only a power, and if not exercised her life estate was not thereby enlarged and converted into a fee, and the remainder over, at her death, is valid and takes effect in the remainderman. These positions, we think, are abundantly sustained by adjudications in this State and elsewhere." [Citing numerous authorities.]

Further on the court said: "It may be true that he intended by the power to sell and dispose of the property as she pleased, to enable her, by exercising the power, to convert her life estate into a fee, but it is equally true that he intended and so provided that, in case she did not exercise the power, the property so remaining at her death should go to and vest in the legatees in remainder. Of this, we think, under the language of the will and rules of construction, there can be no reasonable doubt."

In the case of Harbison v. James, 90 Mo. 411, the clause of the will under consideration was as follows:

"I give and bequeath to my beloved wife, Mary F. Hall, all my property, including real and personal, of any and every description whatever, giving her the right to sell and reinvest, as she may desire, any part of the same for her separate use and benefit, and at her death I desire that any portion of my estate remaining undisposed of shall go to my three daughters, Marie Davis, Annie Harbison and Amelia Wilson."

The court gave effect to the will as written. The

court said: ''The power of sale or disposal, super-added to the life estate, if not exercised, does not en-large the life estate into the fee, and in such case the remainder over is valid, and, at the death of the life tenant, takes effect in the remainderman.''

The court announced the same doctrine in the case of Lewis v. Pitman, 101 Mo. 281, and in Greffet v. Will-man, 114 Mo. 106. In the former case the court said:

''The testator gives all of it to his wife, with the right and power in her to carry on the manfacturing business, or to dispose of the same, as to her may seem best, with the further qualification that whatever of the property she has remaining at her death shall go to the children. Thus interpreted, does the will violate any rule of law? It is claimed by the appellant that it does, and this for the reason that where there is a devise of property, with an absolute power of disposal in the first taker, a subsequent limitation over is void. We shall not review the many authorities cited in support of this proposition of law. It may be conceded that a devise of an estate generally or indefinitely, with a power of disposition over it, carries a fee. [Green v. Sutton, 50 Mo. 186.] But there is a wide difference be-tween that class of cases and those where there is a devise for life with a power of disposition. Where an express life estate is created, an added power of dispos-ition does not convert the estate into a fee.''

The wife having failed to exercise the power, the court held that: ''She had but a life estate . . . and at her death the children became entitled to all that re-mained, and they are entitled to take it under their father's will.''

In Evans v. Folks, 135 Mo. 397, the will under consideration gave a life estate, with superadded power to dispose of the fee with remainder over. The court said: ''However, as he gave to her a life estate by ex-press words, with a power of disposition, which the law holds to be a mere power, which was not executed dur-

ing the life time of Mrs. Evans by a conveyance of the property under the seventh clause of the will, on her death it passed to the heirs of Nathan Evans and Stacy Evans, youngest son of William Evans, or those of them who were then living.''

In Garland v. Smith, 164 Mo. 1, the deed under consideration conveyed: (1) a legal title in fee simple to the trustee; (2) an equitable life estate to the wife, with power to dispose of the fee superadded; (3) a contingent remainder to the issue of the wife living at her death; and (4), in default of such issue, a contingent remainder to the right heirs of Charles Garland. The court held that this arrangement was consistent and valid; that the instrument by which the wife attempted to execute the power being void, and the wife having died, the land vested in the right heirs of Charles Garland.

In the case of Underwood v. Cave, 176 Mo. 1, the clause of the will under consideration read:

''It is my will that the property, real and personal, hereby bequeathed to my wife, shall be hers absolutely during her natural life, to use and enjoy as she may see proper, and at her death, if there should be anything left, my will is that it is be vested and applied to the use of the Lone Jack Baptist Church, used as may be thought most conducive to the advancement of the Christian religion.''

It was held that the wife took a life estate, with superadded power to dispose of the fee, and that the exercise of the power by her cut out the remainderman.

And in the last case cited, St. Louis L. & B. Assn. v. Fueller, 182 Mo. 93, it was held that the power given to the life tenant ''to sell, convey, mortgage or otherwise encumber the land gave her power not only to sell her life interest but the land itself, and when she exercised that power she cut out all interests which the

remainderman would have had if she had not exercised that power.''

It follows from what has been said that James S. Dougherty, at the time the deed of trust aforesaid was executed, had power to dispose of an undivided one-half of the real estate in question in fee simple.

II.  It is next contended that although it be held that James S. Dougherty had power to dispose of the fee simple title to the real estate in question, he had not power to dispose of it by mortgage— that the power of disposal created by the words "with full power and authority to dispose of the absolute estate in fee simple" should be construed as a power to sell and that a power to sell does not include a power to mortgage.  It may be conceded that as a general rule the power to sell does not include a power to mortgage and that the execution of a power by means of a mortgage is a disposition in favor of the donee of the power, and it may be further conceded that if it appeared from the context of the will that it was the intention of the testator that the power granted should be exercised by sale only or for the benefit of others, which is sometimes made manifest by the purpose for which the power of disposal is given and sometimes by the connection in which the word "dispose" is used, the contention might be maintained. But such is not this case.  The grant of power to dispose here is full and general, to be exercised by the grantees for their own benefit, unhampered as to the mode in which it is to be exercised and not associated with any words which upon the maxim of *"noscitur a sociis"* or the principle of *ejusdem generis* could be construed to put any limit upon their power. In other words, the power here is general and unlimited as contradistinguished from the particular or limited powers contemplated in the authorities cited in support of this contention.  The law upon the subject is thus tersely expressed in the text-books: In 22 Am. and Eng. Ency. of Law (2 Ed.), 1133:

"The question whether a power is general or limited depends solely upon the terms of the instrument creating the power; and a power general in its terms will not be cut down to a limited power by subsequent provisions, except by express words or unless an intent to do so is apparent from the instrument creating the power. A general power of appointment may be exercised in favor of whomsoever the donee pleases, even in favor of the donee himself or for his benefit."

And in 1 Sugden on Vendors (3 Am. Ed.), p. 514, as follows:

"A general power is, in regard to the estates which may be created by force of it, tantamount to a limitation in fee, not merely because it enables the donee to limit a fee, which a particular power may also do, but because it enables him to give the fee to whom he pleases; he has an absolute disposing power over the estate, and may bring it into the market whenever his necessities or wishes may lead him to do so."

To the same effect are the authorities generally, and from these principles it follows that no special mode of exercising the power being prescribed in the instrument creating it, such general power of appointment may be executed by a mortgage which will be operative to the extent of the interest of the mortgagor. "The mortgage, however, will operate as an execution of the power only to the extent of the mortgagee's interest, leaving the equity of redemption or surplus as though the power were undisposed of; but where the mortgage also contains limitations over of the surplus, after the satisfaction of the debt secured, it will operate as a complete execution of the power so as to defeat limitations over in default of an exercise of the power." [22 Am. and Eng. Ency. of Law (2 Ed.), 1108.] And such was the deed of trust in this case.

III. It is next, and finally contended, that although James S. Dougherty might have executed the power given him in the will of his father as to the land

in question by the deed of trust, he did not in fact do so, because no reference to the power is made in said deed and the effect thereof was to convey only his life estate. The power of said Dougherty under the will was to dispose of "the absolute estate in fee simple." By the deed, which was for a valuable consideration, he conveyed "the absolute estate in fee simple," as he must have intended what he said, and as he could not have conveyed the absolute title in fee simple except in execution of the power, this sufficiently indicates that the deed was made in execution of the power. [Underwood v. Cave, 176 Mo. 18; Boyer v. Allen, 76 Mo. 498; Kinney v. Mathews, 69 Mo. l. c. 523; Campbell v. Johnson, 65 Mo. 439; Owen v. Ellis, 64 Mo. 77.]

The rule in some of the earlier cases upon which this contention might have been maintained (Pease v. Pilot Knob Iron Co., 49 Mo. 124; Turner v. Timberlake, 53 Mo. 371; Owen v. Switzer, 51 Mo. 322) was thoroughly discredited by the learned and able opinion of NAPTON, J., in Owen v. Ellis, supra, and Owen v. Switzer, supra, the last case in which the rule was ever maintained, was expressly overruled in Campbell v. Johnson, supra, and is no longer the law in this State.

It follows from what has been said that Patrick F. Grace by virtue of the deed of trust, aforesaid, and the trustee's deed, executed in pursuance of the sale thereunder, acquired the fee simple title to an undivided one-half of the premises, and that the court erred in rejecting those deeds and in giving judgment for the defendants. The judgment of the circuit court will, therefore, be reversed and the cause remanded to be proceeded with in accordance with the views expressed in this opinion.

All concur except *Graves*, J., not sitting.