## WISKER et al., Appellants, v. RISCHE.

### Division One, March 12, 1902.

1. **Will:** POWER TO SELL REAL ESTATE: ORDER OF PROBATE COURT   The intention of the testator was to carve out homes for her children and grandchildren, and to set apart certain of her real estate to be sold for the payment of her debts and if any surplus remained from said sales to have it divided among her children and grandchildren; and for this purpose she clearly charged the property in suit with the payment of her debts, and directed her executor, with the advice and consent of a daughter and son named, to sell it. *Held*, that the executor's power to sell did not cease upon the death of the son, but a sale by him, without an order of the probate court, and the application of the proceeds thereof to the payment of testator's debts, was authorized, and carried a good title. The son's death did not deprive the executor from carrying out the main purpose of the will.

2. ———: ———: ———: ACTIVE POWER: TRUSTEE.   The power conferred by the will in such case was not a mere naked power, but was an active trust. The executor had to administer the proceeds of the sale, hence, the will created a trust coupled and charged with a duty.

3. ———: ———: CONSENT OF CERTAIN PARTIES.   The requirement of the consent and advice of testator's daughter and son, was a subordinate one, and the primary object, which was to provide homes for testator's children and to pay her debts out of the residue, should not fail because this subordinate requirement had become impossible of fulfillment. If necessary for the survival of the power, in order that the main purpose of the will may not be defeated, the court would hold that the power of consent, after the death of the son, survived to the daughter alone.

Appeal from St. Louis County Circuit Court.—*Hon. Rudolph Hirzel,* Judge.

AFFIRMED.

*Thos. B. Crews* and *Wm. S. Shirk* for appellants.

(1) The death of Henry C. Lay terminated the power granted to George J. Davis to sell and convey the land. The power had elapsed at the time of the attempted conveyance. 1 Sugden on Powers, side p. 147; 1 Sugden on Powers, side p. 319; 18 Am. and Eng. Ency. Law, p. 878; 1 Kernan, 402. (2) The testatrix did not devise this residue to Davis. She created a power in Davis to "sell or dispose of" the same, with the advice and consent of Henry C. Lay and Henrietta R. Dausman, "upon such terms and for such prices as to them shall seem best." "A power is a liberty of authority reserved by, or limited to, a party to dispose of real or personal property for his own benefit or the benefit of others." 18 Am. and Eng. Ency. Law, p. 878; 1 Perry on Trusts, sec. 248. "A power is an authority conferred upon one person to dispose of an estate vested in another." Anderson's Law Dictionary; 2 Crabbe on Real Prop., 678. The executor, Davis, did not take the land as executor, but was only the donee of a power. Bolton v. Jacks, 6 Robt. (N. Y.) 166; Bouton v. Thomas, 46 Hun, 6; Den. v. Young, 23 N. J. L. 478. The conditions attached to the execution of the power must be complied with strictly. 4 Kent Com., sec. 330; 2 Washburn on Real Prop., sec. 317. All the parties in whom the power is vested must concur in the execution. 1 Sugden on Powers, 202; 1 Perry on Trusts, sec. 294. Power to several to consent ceases with the death of one. 1 Sugden on Powers, sec. 147. When the instrument creating the power provides that it is to be executed with the consent or concurrence of some party other than the donee, such consent is essential to a valid exercise of the power. Richardson v. Crooker, 7 Gray (Mass.) 190; 1 Sugden on

Powers, sec. 147; Hagmond v. Jones, 33 Gratt. (Va.) 317; Hoyt v. Hoyt, 17 Hun, 192; Hamilton v. N. Y., etc., Co., 20 Hun, 88; Barber v. Cary, 11 N. Y. 397; Powles v. Jordon, 62 Md. 499; Kissam v. Dierkes, 49 N. Y. 602; 1 Sugden on Powers, 319; Stall, etc. v. Boon, 44 Mo. 260; Littleton v. Addington, 59 Mo. 278; Burke v. Priest, 50 Mo. App. 310; Hundley v. Harris, 103 Mo. 78; Compton v. McMahan, 19 Mo. App. 498; Emmons v. Gordon, 140 Mo. 498; Price v. Courtney, 87 Mo. 389. There is no equity in defendant's claim of right to reimbursement for purchase money. Price v. Estell, 87 Mo. 378; Norton v. Highleyman, 88 Mo. 621; Grady v. O'Reilly, 116 Mo. 346; Cornwell v. Orton, 126 Mo. 355.

*Kidd & Davis* for respondent.

(1)  The power in the case at bar contains no words expressly providing for nor prohibiting survivorship. Consequently, the question at issue is, does a power of the nature and class created by the will of Charlotte Lay fail upon the death of one of two consenting persons on account of an omission by the testatrix to provide in express terms against her intention and testamentary scheme being defeated by the happening of a remote and unexpected contingency? (a) Cases cited by plaintiffs arising upon powers containing prohibitory words against survivorship are not in point. Such, among others, are Kissam v. Dierkes, 49 N. Y. 602; Powles v. Jordan, 62 Md. 499. (b) In the absence of an express provision, the question is controlled by other parts of the instrument creating the power; and if a survival best accords with the general intent of the provisions of the instrument, then it will survive by implication. Mansell v. Mansell, Wilmot 36; Green v. Green, 2 Jones & L. 529; Franklin v. Osgood, 14 Johns. 526; 2 Johns Ch. 19; Leeds v. Wakefield, 10 Gray 514; Peter v. Beverly, 10 Peters 563; Taylor v. Benham, 5 Howard 233.

Wisker v. Rische.

(c) The donee's authority will survive the death of the consenting person, even in opposition to prohibitory words, when the instrument creating the power, considered as a whole, shows that a sale was intended to be imperative. Green v. Green, supra; Mott v. Ackerman, 92 N. Y. 539; Phillips v. Davies, 92 N. Y. 199; Leeds v. Wakefield, 10 Gray 514; Hewett v. Hewett, 2 Eden. 332. (2) Directions in trust powers are construed as directions, not as conditions, and conditions rendered impossible by death or accident are themselves thereby annulled instead of the power being extinguished. Brown v. Higgs, 4 Ves. 708, 8 Ves. 561; Goodinge v. Goodinge, 3 Ves. 122; Faulkner v. Davis, 18 Gratt. 561; Leeds v. Wakefield, 10 Gray 541; Gibbs v. Marsh, 2 Met. 252; Greenough v. Willis, 10 Cush. 571; Peter v. Beverly, supra; Taylor v. Benham, supra; Miller v. Meetch, 8 Pa. St. 424; 2 Sugden on Powers, sec. 3, star p. 158; 1 Chance on Powers, secs. 195, 257, 745, vol. 2, sec. 3036; 18 Am. and Eng. Ency. Law, pp. 882, 961, 987; 2 Washburn on Real Prop., star page 720; 1 Lewin on Trusts, star p. 611; vol. 2, star p. 834; Pomeroy's Eq. Jur., sec. 835; Perry on Trusts, secs. 248, 249; 2 Story on Esq. Jur., secs. 1060-1061. (3) In the language of a high tribunal and an able jurist, "it is said that naked powers not coupled with an interest are to be strictly construed; but we think it more correct to say that they should be carried into effect and executed according to the true intent of the party conferring them." McKnight v. Wimer, 38 Mo. 138. (a) Powers coupled with an interest or a trust are liberally construed. (b) Powers created by will are liberally construed, the rules of construction applicable to powers created by deed giving way to the rules governing the construction of wills. This is the rule in this State, not only at law, but by statute. 18 Am. and Eng. Ency. Law, p. 938; R. S. 1899, sec. 4650. (4) The arbitrary rules which once obtained as to the execution of powers have never met with favor in the appellate courts of this State. Owen v. Ellis, 64 Mo.

77; Campbell v. Johnson, 65 Mo. 439. The Supreme Court has repeatedly announced the principles and doctrines herein stated. Norcum v. D'Oench, 17 Mo. 98; McKnight v. Wimer, supra; Hardy v. Clarkson, 87 Mo. 171; Dilworth v. Rice, 48 Mo. 124; Gaines v. Fender, 82 Mo. 505. (5) Under the law in this State, appellants were not entitled to recover without offering to do equity. The filing of the answer in itself did not convert the proceedings from one at law into one in equity. The equities set up and proven are sufficient to defeat the suit in ejectment brought by appellants. However, under the rule in this State, they might have filed a reply which would have converted the suit into an equitable proceeding. This they failed to do, and the judgment of the lower court should be affirmed on the pleadings. Valle's Heirs v. Fleming's Heirs, 29 Mo. 152; Huff v. Price, 50 Mo. 228; Schafer v. Causey, 8 Mo. App. 142, 76 Mo. 365; Russell v. Whitely, 59 Mo. 196; Barnum v. Barnum, 119 Mo. 63; Mobley v. Nave, 67 Mo. 546; Carter v. Prior, 78 Mo. 222; Hannah v. Davis, 112 Mo. 609.

MARSHALL, J.:—Ejectment for seventeen-sixtieths of lot 10 of subdivision of Walton estate, in St. Louis county, containing about ninety acres. The petition is in the usual form. The answer is a general denial and equitable defenses. The circuit court entered judgment for the defendant, and the plaintiffs appealed. Charlotte Lay is the common source of title. She died in 1879. The plaintiffs are her grandchildren, being the children of her daughter, Charlotte Wisker, who died in 1877.

Charlotte Lay left surviving her a son, Henry C. Lay, who died about a month after his mother, a daughter, Henrietta, wife of Henry Dausman, and the plaintiffs, the children of her deceased daughter, Charlotte Wisker. She also had a stepson, John F. Lay, who was living at her death.

Mrs. Lay died testate. By her will she disposed of her

property as follows: first, she released the debts her son Henry C. Lay owed her; second, she gave to Henry C. Lay's wife and children about 220 acres of land in Iron county; third, she gave her daughter, Henrietta Dausman, the homestead, in St. Louis; fourth, she gave to George J. Davis, in trust for the plaintiffs, a farm of about 1,000 acres in Pettis county; fifth, she released the debts her stepson, John F. Lay, and his wife owed her; and then she made the following testamentary disposition of the residue of her property, which included the property in controversy here:

"Sixth. All the rest, residue and remainder of my property and estate of every nature and kind whatsoever, after the payment of my just debts, and which property I charge therewith, I hereby authorize and direct my executor hereinafter named with the advice and consent of my daughter Henrietta R. Dausman, and my son Henry C. Lay, to sell and to convey to the purchaser or purchasers thereof, good title, upon such terms and for such prices as to them shall seem best and from the proceeds thereof to pay all just debts and liabilities against me, and if anything shall remain one-third part of such remainder shall be paid to the said Henrietta R. Dausman, and one-third thereof to my son Henry C. Lay, the remaining one-third thereof shall be paid to the trustees aforesaid, hereinbefore named, of my grandchildren, the children of my daughter, Charlotte A. Wisker, to be used by said trustee, at his discretion, in improving the land hereinbefore devised in trust to him, and in educating, clothing and maintaining said grandchildren and the survivors of them; and if anything shall remain therefrom the same is to be divided among said grandchildren as they shall respectively become of age.

"Seventh. I hereby appoint George J. Davis, of St. Louis Missouri, the executor of this my last will and testament."

The will was duly probated and George J. Davis qualified as executor. Mrs. Lay left no personal assets whatever. Debts

aggregating several thousand dollars were proved and allowed against her estate. There was no money with which to pay the debts. Thereupon on April 1, 1882, George J. Davis, without any order of the probate court to sell, but with the consent of Mrs. Henrietta Dausman and her husband, evidenced by their signatures to the deed, and purporting to act under the power conferred by the sixth clause of the will above set out, sold and conveyed the property in controversy, being a part of the residue specified in the sixth clause of the will, to William Rische, the grantor of the defendant, for $5,967.65. The executor applied those proceeds, under the direction and with the approval of the probate court, to the payment of the allowed claims against the estate, and to the payment of taxes on the Iron county land. There was nothing left of such proceeds to devote to improving the Pettis county land devised to him in trust for the plaintiffs or to the education and maintenance of the plaintiffs. But the plaintiffs have enjoyed and now own the Pettis county land by virtue of their grandmother's will.

Henry C. Lay, having died in 1879, about a month subsequent to the testatrix, of course he could not join his sister, Mrs. Henrietta Dausman, in advising and consenting to the sale of the land in controversy by Mrs. Davis in 1882.

## I.

The position of the plaintiffs is that the sixth clause of the will simply conferred a power to sell and apply the proceeds, upon Mr. Davis, limited by the advice and consent of Henry C. Lay and Henrietta Dausman, and that upon the death of Henry C. Lay, this power ceased, and therefore the sale by Davis to defendant's grantor is void, and the power having ceased the residue of the estate of Charlotte Lay descended to her heirs, and that if there was no money or personalty with which to pay the debts of the estate, the necessary funds could

only be raised by having the probate court order a sale of the real property.

In England, and in some of the American cases, the courts literally and strictly construed powers to sell real estate, and it was generally held that the power must be executed exactly in the manner and by the exact persons upon whom it was conferred, and that the slightest failure to comply with the letter of the power vitiated the grant. Thus, if the power to sell was given to three persons (e. g., executors, etc.), *nominatim,* and one died, the power ceased, but if the power was given to three of a class (e. g., executors), and one died, the two remaining could act because they filled the plural number constituting the designated class; but if two of the class died, the survivor could not act and the power ceased. [1 Sugden on Powers, p. 204, et seq.; 4 Kent's Com. (14 Ed.), *p. 333; 1 Perry on Trusts, (5 Ed.), sec. 294; Hamilton v. N. Y. Stock Exch. Bldg. Co., 20 Hun, 88; Powles v. Jordan, 62 Md. 499; Kissam v. Dierkes, 49 N. Y. 602.]

Washburn on Real Prop. (5 Ed.), vol. 2, p. 716, thus states the rule: "In the case of executors, moreover, this nice distinction is recognized and prevails, that if the devise is to them to sell the estate, or for it to be sold, they take a trust of the estate with a power to sell. Whereas, if the devise is that the executors shall sell, it is a naked power, and must be executed by all; while in the other case it is not a naked power, and may be executed by such of the executors as execute the will. If a power is given by will to a trustee, and he neglects to exercise it, the execution of it devolves upon the court; but if the trustee dies before the time prescribed for the execution of the trust, the trust fails, and the testator is to be considered as dying, thus far, intestate. If the authority to sell be given as a trust to the same person named as executor, his resigning his trust as executor does not impair his power to sell. And if the power be accompanied by a personal confidence and trust in the

donee or donees, he or they alone can execute it; nor can it pass to others; it must be executed by the persons named, unless an authority to substitute another be expressly given."

Two reasons are ordinarily given for such construction, first, that the power of sale is, per se, a personal trust or confidence reposed in the donee of the power by the donor thereof, which can not be said of any substituted donee, or if the power is vested in more than one, which can not be executed by a less number; and second, as was so ably pointed out by SCOTT, J., in Norcum v. Ringling, 17 Mo. 1. c. 116, because "the law of primogeniture prevails in England, and has always been favored as the principal means of sustaining one of the estates of the government. Hence, powers to executors to sell, as the object of such provisions was to turn the inheritance out of the course of descent prescribed by law, are construed strictly, and the courts laid hold of any pretext to defeat such dispositions, in order that the heir might not be disinherited." Then that learned judge further remarked: "In contemplating the refinements with which the courts of England indulged themselves in the construction of such powers, we are struck with the subtlety of the human mind. Some of these refinements would seem justly obnoxious to the criticism of being too curious and overstrained; such as consisted rather in formal arrangement of words, than of anything substantial. Under our system of government, the motive to these refinements never existed. Hence, as early as the year 1807, an enactment was made which is in force this day [being sec. 45, R. S. 1899] directing that the sale and conveyance of lands and tenements, to be sold in pursuance of a will, shall be made by the executors, or such of them as shall undertake the execution of it, or by the surviving executor, or by the administrator with the will annexed, if no other person be appointed in such will for that purpose, or if the person so appointed shall refuse to perform the trust, or *die before he shall have completed it* [the italics are superadded to point the application of the rule to the

case at bar]. The comprehensiveness of this provision clearly manifests the indifference with which the General Assembly regarded the refinements with which this subject had been overlaid by the English courts."

In Littleton v. Addington, 59 Mo. 275, WAGNER, J., said if the power was conferred upon the executor and not upon the person named as executor, *nominatim*, the power was not a personal trust but belonged to the office, and survived the death or resignation of the person named as executor. In that case the power was not executed during the continuance of the office of executor, and, hence, the conveyance was held void. The distinction pointed out by Washburn, in the excerpt above quoted, was not called to the attention of the court, and, hence, was not noted, that there are cases where the grant of power creates a trust, independent of the office of executor, which is unaffected by the termination of the executorship.

In addition to what has been so lucidly shown by SCOTT, J., in respect to the abolition by our statute of the fine distinctions and subtleties of the English cases, the statutes of the State have also abrogated the like distinctions and subtleties of the English courts in regard to the construction of wills, and now our courts are required to have "due regard to the directions of the will, and the true intent and meaning of the testator" (R. S. 1899, sec. 4650), instead of applying such a construction as to require a testator to express his purpose in recognized legal phraseology, as was formerly the case.

In the case at bar, the intention of the testatrix is perfectly clear. She intended, first, to carve out homes for her children and grandchildren, and second, to set apart certain of her real property (she had no personalty) for sale for the payment of her debts, and if any surplus remained to have it divided among her children and grandchildren.

The sixth clause of the will, above set out, *expressly*

*charged such property with the payment of her debts,* and directed her executor to sell it and apply the proceeds primarily to the payment of her debts.

The modern rule is that: "A testator may, by his will, confer upon his executor the power to sell his real estate for the payment of debts or for any other purpose to which the testator wishes his real estate to be applied. Such a power may either be given by the will in express terms or it may be implied from the duties imposed by the will on the executor; and the necessity or propriety of a sale may be committed to the judgment of the executor, or the power may be peremptory; but the object of the power must be specified in or clearly ascertainable from the will. When the will gives the power to the executor to sell land in case of a deficiency of assets, he must sell under the power and not under the statute authorizing sales by leave of the probate court." [11 Am. and Eng. Ency. Law (2 Ed.), p. 1040.]

In such case an order or license of the probate court is not necessary, for the power to sell already exists, but after sale, the proceeds must be administered under the order and direction of the probate court. [Ludlow v. Flournoy, 34 Ark. 451; Norris v. Harris, 15 Cal. l. c. 236; Payne v. Payne, 18 Cal. 291; Matter of Delaney, 49 Cal. 76; Matter of Durham, 49 Cal. 490; Tracy v. Murray, 49 Mich. 35; Northrop v. Marquam, 16 Oregon 173; Rogers v. Jones, 13 Tex. Civ. App. 453; Matter of Davids, 5 Dem. (N. Y.) 14; Matter of Rosenfield, 5 Dem. (N. Y.) 251; Going v. Emery, 16 Pick. 107; 26 Am. Dec. 645.]

The power conferred by this will was not a mere naked power, but was an active trust, for there was something more for the executor to do than to simply sell—he had to apply the proceeds—hence, the will created a trust coupled and charged with a duty.

The will required the consent of the son and daughter of the testatrix to the sale. But this was clearly a subor-

dinate requirement and idea to the principal purpose and intention of the will to provide homes for her children, and to pay her debts out of the residue of her property. The primary object and intention of the testatrix should not be allowed to fail because her secondary and subordinate intention had become impossible of fulfillment on account of the death of the son, whose consent to the sale was prescribed. To hold that the son's death, before the sale, had the effect to vitiate and annul the power, would not only *pro tanto* have the effect of holding that the testator died testate but became intestate thereafter by the subsequent death of her son, so far as the residue of her estate is concerned, but would also defeat the dominant scheme and controlling policy of the whole will. Such a narrow and destructive construction of the will and the power conferred upon the executor, would be contrary to the spirit of our statute, which abolished the fine distinctions and subtleties of the common law. [Sec. 45, R. S. 1899]. For, if power given to more than one executor survives to and may be executed by those who remain, after the death of the donees, as this statute provides shall be the case, no good reason can be given why the power of consent given by this will to the son and daughter, should not survive to the daughter, after the death of the son.

In this case the provisions of the will were faithfully observed in all respects, except that the dead son's consent to the sale was not and could not be had. The proceeds of the sale were administered under the direction of the probate court and applied to the payment of the debts of the estate. The alternative of holding that the secondary or the primary intention, design, scheme, plan and policy of the will shall prevail, is here presented, and no difficulty is perceived in reaching the conclusion that the primary object and the dominant purpose and intention shall prevail. This conclusion is in harmony with the principles announced by this court in Lackland v. Walker, 151 Mo. l. c. 257, where it was

said: "Generally, it has been laid down that in such cases it is the primary duty of the court to ascertain the dominant purpose of the donor, and to so administer the trust, and, if necessary, to so modify the details prscribed, in the light of emergencies which may be developed from time to time, as to preserve and effectuate the controlling intent (Barkley v. Donnelly, 112 Mo. 561)." Or, as was said further: "It seems to be settled law that .in a proper case, a court of equity can, in order to preserve the life of the trust, amputate its dead member" (In re Petition of Philadelphia, 2 Brewst. 462).

The judgment of the circuit court is right and should be affirmed.

All concur, except *Valliant, J.*, absent.