## THOMAS B. BROOKS, Trustee, et al. v. PHILLIP O. BROOKS et al., Appellants.

### Division One, March 15, 1905.

1. **WILL: Meaning.** The testator gave all his property to his brother in trust for the use of the trustee's wife "during her natural life and at her death to all the children of said trustee," there being six of them, and empowered the trustee to "invest said estate in real estate for a home for" the trustee's wife "and his said children, to her for life and at the termination of said life estate to said children." By another clause he provided that in the event of the death of the trustee, "his wife surviving him, and her remarriage to another man, her life estate in the property shall cease and she shall take in lieu thereof a

share equal to a share of a child of my said brother to hold absolutely in her own right," and that the circuit court should appoint a successor to the trustee in case of his death. Four years later he added a codicil in which he stated: "I give and bequeath to my" half sister "a portion of my estate equal to the share of my" trustee's wife "and her children to be paid to her by my executor on final settlement of my estate. That is to say, should the wife of my brother" the trustee "take a child's part, then my" said half-sister "shall take a child's part." *Held*, in a suit to construe the will, that the will, as a whole, gave to the half-sister one-eighth part of the estate absolutely to be paid to her on final settlement, and to the trustee's wife and her six children seven-eighths in trust, and that the effect of the codicil was not to give to the half-sister one-half the estate absolutely.

2. ———: **Intention.** It is an established rule of construction in this State that the real intention of the testator shall be ascertained and effectuated, and that that intention must be gathered from reading the whole will and codicil, if there be a codicil.

3. ———: **Cutting Down Gift.** A clear gift is not to be cut down by any subsequent provision which does not, with reasonable certainty, indicate an intention to cut it down. The plain intention of the testator, and not the comparative lucidity of the two parts of the will, is to govern.

4. ———: ———: **Codicil: Scilicet.** The words of the codicil were: "I give and bequeath to my" half sister "a portion of my estate equal to the share of my" trustee's "wife and her children to be paid to her by my executor on final settlement of my estate. That is to say, should the wife of my brother" the trustee "take a child's part, then my" said half-sister "shall take a child's part." In the previous part of the will he had given his entire property left after final settlement to a trustee for the use of his wife for life and remainder to her children after her death, but provided that if the trustee should die and she remarry she was to have only a child's share, there being six children. *Held*, that the first clause of the codicil standing alone might be held to be a gift to the half-sister of a half of the estate, but when read in connection with the explanatory clause which immediately follows, the word "share" means a child's share, or one-eighth. *Held*, second, that the explanatory sentence can have only one effect upon the first sentence in the codicil, and that is, to explain the portion of the estate intended for the half-sister, and not to explain the time when she should receive it, for that time was definitely fixed by the first sentence to be when the executor made final settlement, and, therefore, it needed no explanation. *Held*, third, that to construe the

explanatory clause or *scilicet* to mean that the half-sister would take only a portion in the event the trustee's wife remarried would be to cut down by the *scilicet* the clear intent of the first sentence of the codicil, by making it an uncertain gift, depending upon the contingency of the trustee's wife remarrying, and defeating it entirely if she should not remarry.

5. ————: That is to Say: Meaning. A clause beginning with the words, "That is to say," is to be held as explanatory of an anterior clause, and as setting forth the interpretation or construction the writer has himself put upon that clause, and not as destroying that clause.

Appeal from Howard Circuit Court.—*Hon. Jno. A. Hockaday,* Judge.

AFFIRMED.

*Sam. C. Major* and *W. M. Williams* for appellants.

(1) No bill of exceptions is necessary to present for the consideration of this court the error relied upon by the appellants for a reversal of the decree rendered by the court below. Bagby v. Emerson, 79 Mo. 140; State ex rel. v. White, 61 Mo. 441; Land Co. v. Bretz, 125 Mo. 422; Ryan v. Growney, 125 Mo. 482; Brown v. Appleman, 83 Mo. App. 83. (2) The court erred in holding that Irene Scott, one of the appellants, was only entitled to an undivided one-eighth of the estate. The proper construction of the will and codicil entitles her to an undivided one-half of the estate, to be paid over by the executor upon the final settlement. (a) The first part of the codicil gives in clear and plain language to the sister, Irene Scott, a portion of the estate equal to that given to the wife and children of Thos. B. Brooks. This can not be taken away by a doubtful and vague expression at 'the close of said codicil. If there be a doubt about the meaning of the phrase "That is to say, should the wife of my brother, T. B. Brooks, take a child's part, then my sister, Irene Scott, to take a child's part," this doubtful expression

can not lessen or destroy the legacy clearly given by the first part of said codicil. Nichols v. Boswell, 103 Mo. 158; Roseboom v. Roseboom, 81 N. Y. 359. (b) The codicil can not mean that the sister, Irene Scott's share is to depend upon the wife of Thomas B. Brooks' taking a share of the estate equal to that of one of his children. Mrs. Brooks is only to take a share equal to that of one of the children of her husband in the event that she survives him and remarries. The codicil provides that the sister's legacy shall be paid to her upon the final settlement. It is not to await an event that can only occur in the future and which may never happen. A construction will not be adopted which might possibly defeat the legacy to the sister *in toto*. Crecelius v. Horst, 78 Mo. 566.

*O. S. Barton* and *A. W. Walker* for respondents.

(1)   (a) The motion to dismiss the appeal should be sustained. This court acquires jurisdiction of an appeal only when the facts necessary to confer jurisdiction affirmatively appear from the record. After the case was tried in the circuit court upon agreed facts showing that the amount of the estate in dispute was over five thousand dollars and judgment was rendered against appellants' contention, they were entitled to take an appeal to the Supreme Court only. If an appeal had been granted to the Kansas City Court of Appeals upon a true record, that court would have had no jurisdiction and would have transferred the cause to this court. Rule 7 of this court requires the whole of the evidence to be embodied in the bill of exceptions in cases of equitable jurisdiction. If appellants had complied with this salutary rule they would have given this court jurisdiction to hear and determine their appeal. They have not done so. Certainly they can not confer jurisdiction on the Court of Appeals in a case properly appealable to this court by failing to comply with the

rules of this court or to file their bill of exceptions. Kitchell v. Railroad, 146 Mo. 455; Scheurich v. Light Co., 81 S. W. 1226; Rule 7 of this court. (b) Furthermore, this being a case of equitable jurisdiction, this court will not review it upon the merits unless the whole of the evidence is brought up in compliance with Rule 7. State ex rel. v. Jarrott, 81 S. W. 879. (c) The motion to dismiss the appeal should be sustained for the further reason that the appellant, Phillip O. Brooks, has no interest in the suit except as executor. As such he is a mere distributer of the funds in his hands. It is immaterial to him how the funds are divided among the distributees. All he can ask is for a court of competent jurisdiction to direct him how to make the distribution. The decree of the circuit court does that and is sufficient to protect him. He has no right to appeal from it. He is not aggrieved. He has no right to maintain a suit or incur costs on behalf of certain distributees against other distributees simply over a question of distribution of funds among them. 2 Ency. Pl. and Pr., p. 164; Goldtree v. Thompson, 83 Cal. 420; Singmasters' Appeal, 86 Pa. St. 169; McColgan v. McLaughlin, 58 Md. 501. (2) The court adopted the only reasonable construction of the will and codicil. (a) The two sentences of the provision stand together and not in different items or clauses. The one is an interpretation of the other. The testator had no children. Clearly the words "Thos. B. Brooks' wife and her children" are used distributively and the testator intended by the codicil to give his half-sister, Irene Scott, an absolute share in his estate to be ascertained by dividing the estate by the number of his brother's children considering the wife, Mary Brooks, and the half-sister, Irene Scott, also as children. (b) This construction harmonizes and gives effect to both sentences of the provision, and does no violence to either. Clauses should be reconciled and the whole will given effect whenever possible. Carr v. Dings, 58 Mo. 400;

Mersman v. Mersman, 136 Mo. 244. (c) The words, "That is to say," in the second sentence, are themselves words of interpretation used by the testator to explain the first sentence. They can not properly be rejected. They show that the second sentence contains the essence of the testator's intention. An interpretation given by a testator should be followed whenever possible. Small v. Field, 102 Mo. 129. (d) The construction contended for by appellants is unreasonable. Their construction when applied would make the second sentence of the codicil read: "That is to say, should the wife of my brother, T. B. Brooks, and her children together be treated as taking a child's part, then my sister, Irene Scott, shall take a child's part." This is strained and unnatural. Had the testator intended to give Irene Scott one-half of his estate, naturally he would have said, "I give and bequeath to my sister, Irene Scott, one-half of my estate after payment of just debts." Those simple and natural words would have expressed the whole idea if appellants' contention be correct. Besides it is unreasonable to suppose that after the testator had by his will of 1891 given his entire estate to the family of his only full brother, he would by a codicil divert one-half of it to a half-sister. Furthermore, the codicil shows no intention of disturbing the trust created by the will of 1891. Had he intended to divert one-half of the estate, he would probadly have modified the provisions creating the trust in doing it.

MARSHALL, J.—This is a suit in equity to construe a will and a codicil thereto of James B. Brooks, who died in Howard county, Missouri, on the 13th of July, 1902. The plaintiffs are Thos. B. Brooks, the testamentary trustee under the will, and his wife, Mary Brooks, and their children, beneficiaries under the will. And the defendants are Phillip O. Brooks, executor of

the will, and Irene Scott, and her husband, said Irene being a half-sister of the testator, and the beneficiary named in the codicil to the will.

The case is here on a certificate of the judgment. The testimony is not preserved in the record and no evidence is contained in the abstract of the record. The question for adjudication arises on the face of the record proper.

The decree finds that James B. Brooks died, testate, leaving as his next of kin a full brother, Thos. B. Brooks; two half-brothers, one of whom is Phillip O. Brooks, said executor, and three half-sisters, one of whom is the said Irene Scott. The full brother is the husband of Mary Brooks, and the father of the six minor plaintiffs.

After stating the relationship of the parties to the testator, the petition states that said James B. Brooks left the following last will and testament:

"I, James B. Brooks, of Howard county, Missouri, of sound mind and disposing memory, do make and publish this my last will and testament.

"1.   I will and direct that my funeral expenses and all my just debts be paid out of my estate by my executor, and that a suitable monument be erected to mark my grave.

"2.   I will, devise and bequeath all the rest, residue and remainder of my estate, real and personal, of every description to my brother, Thomas B. Brooks, in trust for the use of his wife, Mary Brooks, during her natural life, and at her death to all the children of said Thomas B. Brooks; said trustee shall have power to invest said estate in real estate for a home for said Mary Brooks and his said children, to her for life and at the termination of said life estate to said children. If any of said children shall have died, leaving children or descendants, such descendants shall take the share his or her father or mother would have taken if living. Said trustee shall also have power to

sell and convey any real estate purchased by him and put the proceeds to interest, securing the same by unencumbered real estate of at least double the amount or value loaned, said interest to be paid annually or to compound annually.

"3. Said trustee, instead of investing said estate, may put the same to interest on the terms above mentioned, being careful to have the same well secured and the interest properly paid when due so that said interest may be paid to said Mary Brooks promptly every year. If it turns out that said interest shall not be sufficient for the support of the said Mary and said children, said trustee shall have the right to pay over to said Mary such part of the principal as may be actually necessary, but I wish the estate hereby willed to be carefully managed so as to preserve it for the children of said Thomas B. Brooks.

"4. My executor shall have power to sell all my personal property at public or private sale for cash or on credit as he may consider best. He shall also have power to sell and convey all my real estate at public or private sale and to execute and deliver deeds of conveyance to the purchaser or purchasers thereof.

"5. In the event that my brother, Thomas B. Brooks, shall die, his wife surviving him, and her remarriage to another man, her life estate in the property above shall cease and she shall take in lieu thereof a share equal to a share of a child of my said brother to hold absolutely in her own right.

"And so soon as it can be done after the death of my said brother Thomas, the circuit court of Howard county shall appoint a trustee in his place.

"I appoint my brother, Phillip O. Brooks, executor of this will and direct that no bond or security be required of him.

"Witness my hand and seal this 31st, day of December, 1901," etc.

The petition further states that after executing said will the testator made and executed the following codicil thereto:

"I, James B. Brooks, being of sound mind, do make this codicil to my last will and testament dated December 31, 1891, as follows:

"I give and bequeath to my sister, Irene Scott, a portion of my estate equal to the share of my brother Thomas B. Brooks's wife and her children to be paid to her by my executor on final settlement of my estate. That is to say, should the wife of my brother, T. B. Brooks, take a child's part, then my sister, Irene Scott, shall take a child's part.

"In testimony whereof I have hereunto set my hand and the seal this 13th day of November, A. D. 1895," etc.

The petition further states that said Irene Scott claims one-half of the whole estate after the payment of the debts, and that the executor is threatening to pay said one-half to said Irene Scott, and that the plaintiffs have no adequate remedy at law, and hence invoke the aid of a court of equity.

The petition further states that said Irene can have no interest in said property under said will and codicil except upon one or the other of the following interpretations thereof, to-wit:

"First, that the testator intended by said codicil that the said Irene Scott should take a portion of his estate equal to the share that Mary Brooks, the wife of Thomas B. Brooks, would take upon the contingency that she, the said Mary Brooks, should survive her said husband and remarry after his death, and further that the said Irene Scott should take no interest whatever in the testator's estate unless the said Mary Brooks should both survive her husband, Thomas B. Brooks, and remarry after his death.

"Or, second, that the testator intended by said codicil that the said Irene Scott should take a portion

of his estate equal to the share that a child of Thomas B. Brooks would take, considering and estimating the said Mary Brooks as also taking a child's part."

The petition further states that if said codicil was not intended to convey one or the other of the meanings set forth in said two interpretations, then said codicil is so vague, ambiguous, inconsistent and contradictory that it is void and ineffective and wholly inadequate and insufficient to express any intention of the testator or to serve as words of conveyance and should be held for naught.

The prayer of the petition is that the court interpret the will and direct the trustee and the executor as to the proper disposition of the estate.

The defendants answered separately, but their answers are practically the same. They claim that the said Irene Scott is entitled to an undivided one-half of the whole estate after the payment of the debts thereof, under the terms of the codicil, and deny that the interpretations proposed by the plaintiffs are correct.

The circuit court entered a decree construing the will to mean that it was the intention of the testator, "by said will and codicil to convey absolutely to his half-sister, Irene Scott, one-eighth part of his estate after the payment of funeral expenses and just debts and cost of administration to be paid to her by the executor upon final settlement of the estate; and that the testator intended by said will and codicil to convey seven-eights of said estate, after the payment of funeral expenses and just debts, to his brother Thomas B. Brooks, in trust under the provision of said will, dated December 31, 1891, for the use of Mary Brooks, the wife of Thomas B. Brooks, until her death or remarriage after the death of Thomas B. Brooks and upon her death or remarriage to be paid over under the provision of said will," and decreed distribution accordingly. From this decree the defendant appealed to this court.

## I.

The sole question presented by this record is the proper interpretation of this will and codicil.

An analysis of the will discloses the scheme thereof to be, that the testator intended, after the payment of his debts and the erection of a monument over his grave, that his whole estate should vest in his full brother, Thomas B. Brooks, in trust, however, for Mary Brooks, the wife of the trustee, during her natural life, and at her death the remainder to go to the children of Thomas B. and Mary Brooks in fee. Power was given to the trustee to invest in real estate for a home for the beneficiaries, and the trustee was further empowered to sell any of the real estate and reinvest the proceeds either in land or in securities or in such manner that the estate should be preserved to the remaindermen after the death of the life tenant. Power was given to the executor to sell the personal property and also to sell the real property at public or private sale. The fifth clause of the will provided, however, that if Thomas B. Brooks, the testamentary trustee, should die, leaving his wife Mary surviving him, and if said Mary should remarry, her life estate should cease and that in lieu thereof she should take a share equal to a share of her child, absolutely in her own right. In order to perpetuate the trust the will provided that in case of the death of Thomas B. Brooks, the trustee, the court should appoint a successor.

The purpose of the testator as expressed in the will is, therefore, perfectly plain. It was to provide for the wife of the full brother of the testator during her life or widowhood, by giving her a life estate, and to provide for the nieces and nephews of the testator, being the children of the testator's full brother, by giving them the remainder in fee after the death of the life tenant; but if the life tenant remarried, the testator

intended her life estate to cease and that she should have a share equal to the share of each of her children.

The real question in this case is, as to the effect of the codicil upon the will. The codicil gives to Irene Scott, the half-sister of the testator, ''a portion of my estate equal to the share of my brother Thomas B. Brooks' wife and her children to be paid to her by my executor upon final settlement of my estate. That is to say, should the wife of my brother, T. B. Brooks, take a child's part, then my sister, Irene Scott, shall take a child's part.''

Irene Scott contends that the true meaning of the codicil is, that the estate shall be divided into two equal parts, one of which shall go to her, and the other to the wife and children of Thomas B. Brooks. On the other hand, plaintiffs contend that the will means either, first, that Irene Scott shall have no interest in the property unless Mary Brooks remarries and takes a child's share, in which event Irene Scott shall have a child's share, or, second, that it means that when the time for final settlement of the estate arrives, it shall be considered that Mary Brooks will take a child's share instead of a life estate, and that Irene Scott shall immediately take also a child's share; or, third, that if one or the other two foregoing constructions can not be placed upon the codicil, then the codicil is so vague and ambiguous that it is void.

It is an established rule of construction in this State, both by virtue of the statutes and the decisions of this court, that the real intention of the testator shall be ascertained and effectuated. That the intention must be gathered from a reading of the whole will and codicil if there be such. The words employed in a will are merely the human means employed to express an idea. Where the idea is clear, the words employed must be read so as to give effect to the intention. [Cross v. Hoch, 149 Mo. 325; Briant v. Garrison, 150 Mo. 655; Wisker v. Rische, 167 Mo. 533; RoBards v.

Brown, 167 Mo. 447; Simmons v. Cabanne, 177 Mo. 351.]

"It has become a rule of construction that a clear gift is not to be cut down by any subsequent provision, unless the latter is equally clear; but perhaps the better statement is that a clear gift is not to be cut down by anything which does not, with reasonable certainty, indicate an intention to cut it down. Whichever form be adopted, the plain intention of the testator, and not the comparative lucidity of the two parts of the will, is to be regarded." [29 Am. and Eng. Ency. of Law (1 Ed.), p. 369.]

Jarman on Wills states the law thus: "Another principle of construction is, that where the will contains a clear and unambiguous disposition of property, real or personal, such a gift is not allowed to be revoked by doubtful expressions in a codicil." [Jarman on Wills (6 Ed.), p. 179.]

The same author says: "Numerous are the questions which have arisen in regard to the extent to which a codicil affects the disposition of a will or antecedent codicil, and which are commonly occasioned by the person framing the codicil not having an accurate knowledge or recollection of the contents of the prior testamentary paper. In dealing with such cases it is an established rule not to disturb the disposition of the will further than is absolutely necessary for the purpose of giving effect to the codicil." [Idem, p. 174.]

And at page 698 the same author says: "And it has been elsewhere noticed as an established rule that a gift once clearly expressed in the will shall not be cut down by ambiguous expressions contained in the codicil."

Again the same author says: "Where, however, the terms of the prior disposition are themselves ambiguous, their construction may properly be guided by a recital couched in more precise language in a codicil." [Idem, p. 531.]

The same author further announces the rule that: "Even where the times of the actual execution of the respective papers are known, so that if they are inconsistent, there can be no difficulty in determining which is to be preferred, the courts will, if possible, adopt such a construction as will give effect to both, sacrificing the earlier so far only as it is clearly irreconcilable with the later paper; supposing, of course, that such later-paper contains no express clause of revocation, or other clear indication of a contrary intention." [Idem, p. 172.]

In speaking of plainly conflicting provisions in different clauses of the same will this court, in Small v. Field, 102 Mo. 1. c. 129, said: "The rule is that, when the testator interprets a particular clause in his will, the courts, when called to construe it, will follow that interpretation. [Reinders v. Koppelman, 94 Mo. 343.]"

It is in the light of these rules and principles that the will and codicil in question must be read. The will is clear, plain, and unequivocal. The testator appointed his full brother to be the testamentary trustee, to hold all of his estate for the trustee's wife and children; the wife to have a life estate and the children the remainder in fee, or, if the wife remarried, her life estate to cease, and she to have a child's share in lieu thereof. The testator contemplated that the trust estate should continue during the minority of the children. The will, however, contemplates that the trustee shall begin his duties when the estate has been finally administered by the executor. It will be noticed that the testamentary trustee was not made the executor, and that a half-brother of the testator was appointed executor without bond. One of the peculiarities of the will is, that the executor before final settlement, or the trustee thereof after final settlement, is vested with power to sell any or all of the real or personal estate. The dominant purpose of the will is perfectly manifest.

The controlling idea is, to provide for the wife and children of the full brother of the testator.

The will was executed on the 31st of December, 1891; thereafter on the 13th of November, 1895, the codicil was made. The codicil indicates an intention to cut down the estates created by the will. The only question is to what extent they should be cut down.

The first sentence of the codicil, if standing alone, would clearly sustain the contention of the defendants, that the half-sister, Irene, was to have one-half of the estate and the other half thereof was to go to the wife and children of the full brother; for the language employed in the first sentence is, that the half-sister shall have ''a portion of my estate equal to the share of my brother Thomas B. Brooks' wife and her children, to be paid her by my executor on final settlement of my estate.'' This is clearly a gift of a portion of the estate to Irene, divested of the trust, for it provides that it shall be paid to her by the executor on final settlement of the estate, which excludes the idea that the trustee was to have any concern therewith.

If this was all that the codicil contained there would be no difficulty in construing the will and codicil as the defendants contend for; but the next sentence is a testamentary construction placed by the testator upon the language employed by him in the first sentence of the codicil, and explains what the testator meant in the first sentence when he said his half-sister, Irene, should have a portion of his estate equal to a share of his brother's wife and children. The language employed in the second sentence is, ''That is to say, should the wife of my brother, T. B. Brooks, take a child's part, then my sister, Irene Scott, shall take a child's part.''

It will be observed that the first sentence employs the language, ''A portion of my estate equal to the share,'' etc. That language is susceptible of the construction that the portion thus given to Irene should equal the portion given to the testator's brother's wife and

children combined, that is, one-half to each class. But it is also susceptible of the construction that the portion intended for Irene should only be such portion as the testator's brother's wife and children take separately. The difficulty with the latter construction arises from the words employed in the first sentence, that the portion devised to his brother's wife was, primarily, a life estate, but in the contingency of her remarriage, it was to be a child's share. Of course, if she took a life estate, Irene could not also have a life estate therein. If the brother's wife remarried and took a child's share, then the first sentence of the codicil will bear the construction that the testator intended that Irene should also take a child's share; in other words, that the estate should then be divided into eighths, one-eighth of which was to go to Thomas B. Brooks' widow who had remarried, one-eighth to Irene, and the remaining six-eighths to the children of Thomas Brooks, each one-eighth.

It thus appears that the codicil, when read in connection with the will, clearly shows that the first sentence is susceptible of more than the one construction contended for by the defendants. The testator evidently knew that he had not clearly expressed his idea and intention in the first sentence of the codicil, and, therefore, he added the second sentence to explain more clearly or definitely what he intended by the first sentence of the codicil. He said: "That is to say, should the wife of my brother, T. B. Brooks, take a child's part, then my sister, Irene Scott, shall take a child's part."

It will be observed that the explanation does not fully explain, for the first sentence of the codicil contemplates and directs that the share of Irene shall be paid to her by the executor on final settlement of the estate, and not by the trustee. The second sentence of the codicil clears up the obscurity in the first sentence, as to the part the testator intended to go to his sister

Irene; or at any rate, indicates an intention not to give her one-half of the whole estate, but to give her a child's share only in the estate. The confusion in the explanatory sentence arises out of the fact that it contemplates, apparently, that Irene shall take a child's part only in the event that his brother's wife takes a child's part. His brother's wife would only take a child's part in the event she remarried, and she might not remarry until after the executor had finally settled the estate, yet the first sentence of the codicil requires Irene's part to be paid to her by the executor on the final settlement of the estate, at which time, the said wife of the testator's brother, not having remarried, would not have taken a child's part, and, therefore, under a literal construction of the explanatory sentence, Irene's right would not then have accrued.

The whole confusion arises out of the discrepancies in the language employed in the first and explanatory sentences of the codicil. It is obvious that the testator realized there was such a difficulty with respect to the first sentence of the codicil, and he tried to remove it by the explanatory sentence, instead of rewriting it.

The term, "That is to say," has undergone judicial interpretation. In Stukeley v. Butler (Hobart's Reports) it was held, as stated in the syllabi, that "A *scilicet* can not restrict a grant where the former words are express and special. *Secus,* where the former words are so indifferent that they may receive such a restriction without apparent injury. A *scilicet* may particularize what before was general, or distribute what was in gross, or explain what was uncertain; but it must not be inconsistent with the premises."

And in the body of the opinion, Sir Henry HOBART said, "Now I come to the use of a *viz.* or *sc.* or in the English, that is to say, and the nature and force of it. It is neither a direct several clause, nor a direct entire clause, but it is *intermedia.* First, it is clear that it is not a substantive clause of itself; and therefore you can

neither begin a sentence with it, nor make a sentence of it by itself; but it is (as I may say) *clausula ancillaris,* a kind of handmaid to another clause, and to deliver her mind, not her own. And therefore it is a kind of interpreter; her natural and proper use is to particularize that, that is before general, or distribute that, that is in gross, or explain that, that is doubtful and obscure.'' [Hobart's Reports, p. 171b.]

The term "that is to say," as employed in an indictment, underwent judicial interpretation in King v. Powell (2 Blackstone's Rep. 787), and was there construed to be intended as explanatory of what preceded it.

The second or explanatory sentence of the codicil can have only one effect upon the first sentence of the codicil in question, and that is, to explain the portion of the estate intended for Irene, and not to explain the time when she should receive the same; for the time at which she should receive such portion was definitely fixed by the first sentence to be, when the executor made final settlement of the estate. That needed no explanation. The only feature of the first sentence of the codicil which needed or admitted of explanation was, as to the *portion* which Irene was to take. The *scilicet* explained that portion to be a child's share. The fact that it also said Irene should take a child's share if the testator's brother's wife took a child's share, could not be construed to cut down the clear gift of some portion, nor to postpone the time at which she should take the same; for some portion was intended to be devised by the first sentence of the codicil, and the time was certainly fixed thereby.

To construe the *scilicet* to mean that Irene should only take a portion in the event the testator's brother's wife remarried, would be to cut down by the *scilicet* the clear intent of the first sentence of the codicil, by making it an uncertain gift, depending entirely upon the contingency of the brother's wife remarrying, and of

course, defeating it entirely if she should not so re-marry. It must, therefore, be held, that the *scilicet* has the effect only to define the portion of the estate that Irene was to have, and to limit it to a child's share to be paid to her by the executor on final settlement of the estate, and that so much of the *scilicet* as, seemingly, makes that contingent upon the remarriage of the brother's widow, must be rejected as repugnant to the clear gift contained in the first sentence of this codicil.

This is the view the circuit court took of the case ant it was clearly the correct view, and, therefore, the judgment of the circuit court is affirmed.

All concur.