# JOHN H. DEWEIN et al., Appellants, v. JOHN HOOSS et al.

## Division Two, July 15, 1911.

1. **WILLS: Power to Sell: Power to Mortgage.** As a general rule, a power to sell given by a will does not authorize the person to whom the power is given to borrow money and mortgage the property devised; but a provision in the will "giving and granting her full power and absolute authority to dispose of all or so much as she desires and as may be necessary to provide for her and the children during her life," and "the foregoing provision is to be so construed as to give her absolute title to and in the whole of my estate, real, personal and mixed, to enable her to dispose of the same at her option, and that she may make a good title to the purchasers," did confer on her power to borrow money and execute a valid deed of trust on the property to secure the same, for the purpose of saving the property from sale under an existing mortgage, and to save the property as a home for herself and children. And the unlimited power to mortgage given by those words, is not invalidated or restricted by other words declaring that "at her death it is my will and wish that the remainder or residue if any there be, be divided in equal shares among all my children."

2. **———: ———: ———: Mismanagement.** An effort, after a delay for thirty years, to show that the devisee with power to mortgage did not sell the other property at its full market value, and that if she had done so she could have paid off the debt which she kept alive by subsequent renewals of the mortgage on the property remaining, and that she otherwise mismanaged the estate, is too stale; besides, there is an ample remedy provided by statute for an executrix's mismanagement of an estate.

3. **DEED OF TRUST: Barred by Limitations.** A deed of trust made in 1879, with credits on the note at such intervals as kept the note from being at any time barred by limitations, was not barred by the Statute of Limitations at the time of its foreclosure in 1906. And whether the payments were made by the maker of the note, or by some one else at her request, for instance, a son in whose behalf the original indebtedness was incurred, they were valid, and prevented the running of the statute.

4. **PAYMENTS MADE BY OTHER: Competency to Testify.** A witness who made payments on a note at the request of the debtor is competent to testify, after the debtor is dead, that he made such payments and credits, and at the debtor's request.

Appeal from Perry Circuit Court.—*Hon. Samuel Davis,* Special Judge.

AFFIRMED.

*Samuel Bond* and *Edward Robb* for appellants.

(1) Under the will of Henry Hooss, deceased, Barbara Hooss was given a life estate. A power of sale or disposal added to a devise of a life estate, does not enlarge the estate devised into a fee in the first taker. Rubey v. Barnett, 12 Mo. 7; Redmond v. Barger, 118 Mo. 568; McMillan v. Farrow, 141 Mo. 63; Lewis v. Pitman, 101 Mo. 281; Grace v. Perry, 197 Mo. 550; Tisdale v. Prather, 210 Mo. 409; Evans v. Folk, 135 Mo. 403; Steiff v. Seibert, 128 Ia. 746; Page on Wills, sec. 576; Tiedeman Real Property, sec. 564. (2) Under the 2d and 4th clauses of the will of Henry Hooss, deceased, Barbara Hooss was given power and authority to sell and dispose of real estate for the payment of debts, and for the support and maintenance of herself and children during her life. And she was not authorized by either of these provisions to mortgage or encumber the property for any purpose. Price v. Courtney, 87 Mo. 387; Price v. Estill, 87 Mo. 378; Wood v. Kice, 103 Mo. 329; Garland v. Smith, 164 Mo. 15; Dougherty v. Dougherty, 204 Mo. 228; Page on Wills, sec. 691; Trust Co. v. Bank, 14 R. I. 625; Sires v. Sires, 43 S. C. 266; Green v. Clairborne, 83 Va. 386; Quisenberry v. Land Co., 92 Tex. 247; Bloomer v. Waldron, 3 Hill (N. Y.), 361; Hoyt v. Jacques, 129 Mass. 286; Stokes v. Payne, 58 Mass. 614; Constant v. Servoss, 3 Barb. 128; Miller v. Mook, 5 Ky. L. R. 327; Hubbard v. Congregation, 34 Iowa, 31; Land & Imp. Co. v. Sanntrock, 60 N. J. Eq. 471; Wilson v. Ins. Co., 60 Md. 150; Griffin v. Griffin, 141 Ill. 373. (3) The power to sell to pay debts, and the power to dispose of, for the purpose of support of the life tenant and children, are both limited powers of

disposal, and not general powers for the sole benefit of the life tenant, and should be strictly construed. Garland v. Smith, 164 Mo. 15; Wood v. Kice, 103 Mo. 335; Stocker v. Foster, 60 N. E. (Mass.) 407; Scheidt v. Crecelius, 94 Mo. 322; Clark v. Clark, 50 N. E. 101; Griffin v. Griffin, 31 N. E. 131; 18 Am. and Eng. Ency. (1 Ed.), 886; 2 Bouv. Inst., 1922; 2 Washburne Real Prop., 307; Fleming v. Mills, 55 N. E. 373; Woods v. Robertson, 15 N. E. 457; In re Proctor, 63 N. W. 670; Ford v. Ticknor, 47 N. E. 877; Constant v. Servoss, 3 Barb. 128; Wilson v. Ins. Co., 60 Md. 150. (4) A mortgage deed of trust in Missouri, is not a sale, or disposal or an alienation of the land; it is not even a conditional sale; it is merely a security for a debt, creating so far as the mortgagor has the power, a lien on the land. "It is wanting in all the essential elements of an alienation." Dickerson v. Bridges, 147 Mo. 243; Busnell v. Ins. Co., 110 Mo. App. 229; Logan v. Railroad, 43 Mo. App. 75; Fischer v. Johnson, 51 Mo. App. 162; Pease v. Iron Co., 49 Mo. 124; 3 Pom. Eq., sec. 1188. (5) A power of sale cannot be delegated. Inasmuch as a mortgage or deed of trust is not a sale or conveyance of title, but only a security for a debt or lien therefor, and title is not divested until a foreclosure sale; the sale made by Henry G. Kiesler, trustee, after the death of the life tenant, was in effect an attempted execution of an invalid delegated power and void. 2 Perry on Trusts (2 Ed.), secs. 768, 779. (6) The note and deed of trust given by Barbara Hooss to John Hooss and Joseph Huber, dated December 22, 1879, in which Henry G. Kiesler was trustee, was barred by the Statute of Limitations.

*John V. Noell* for respondents.

(1) Where a testator charges his real estate with the payment of his debts, and confers a power of sale for that purpose, and such purpose can as well,

or better, be subserved by a mortgage, then the power to sell includes the power to mortgage, unless it is evident from the provisions of the will that it was the intention of the testator to sell and convert his property into money out and out. Not only does our statute (R. S. 1909, sec. 2908) charge one's real and personal estate with the payments of his debts, but Henry Hooss expressly charges his real and personal estate with the payment of his debts, and gives his widow unlimited discretion in the sale of his property "for the purpose of raising the necessary means" to pay off his indebtedness and authorizes her to do so "without orders of the court," and without being accountable to any court for her conduct in the matter. It is submitted by respondents that Barbara Hooss had the power to mortgage lot 64 for the payment of her husband's debts, under the second clause of the will. 2 Washb. Real Prop. (4 Ed.), p. 655; Mills v. Banks, 3 P. Wmc. 9; Ball v. Harris, 4 Mylne & Craig, 267; Kent v. Morrison, 153 Mass. 139; Zane v. Kennedy, 73 Pa. St. 192; Loebenthal v. Raleigh, 36 N. J. 169; Fisher on Mortgages, sec. 435; Sugden on Powers (3 Am. Ed.), p. 552; 2 Perry on Trusts, sec. 768; Waterman v. Baldwin, 68 Iowa, 255; Steifel v. Clark, 68 Tenn. 470; Lancaster v. Dolan, 1 Rawle (Penn.), 231; Corporation v. Wallace, 3 Rawle, 109; Gordon v. Preston, 1 Watts, 386; Duval's Appeal, 2 Wright, 118; Ins. Co. v. Auction, 6 Wright, 263; Hill on Trustees, p. 475; Hall v. Preble, 68 Me. 100; Richardson v. Richardson, 80 Me. 585; Page v. Cooper, 16 Bear. 396; Leggett v. Firth, 53 Hun. (N. Y.) 152; Stroughill v. Austey, 1 DeG. M. & G. 635. (2) But even if the court should believe that Barbara Hooss acquired only a life estate under the fourth clause of the will, yet it is plain from the provisions of the will that she was also given the unrestricted power to dispose of the fee at her option, without being accountable to any court for her conduct in the matter, and without

being subject to the dictation of anybody. Her power was one coupled with an interest, and not a naked power to be used solely for the benefit of others, nor a power of sale for reinvestment, as was the case in nearly all of the decisions cited by appellants' counsel in their brief. In the fourth clause of the will of Henry Hooss the word "sell" is not used; but the word "dispose" occurs twice therein. While naked powers are generally construed strictly by the courts, the rule is different as to powers coupled with an interest. The rule in the latter class of cases is to construe the power liberally, so as to carry out and give effect to the cardinal intention of the testator; and in doing this, courts pay more attention to the spirit than to the letter of the will, or other instrument. *Qui haeret in litera, haeret in cortice.* Grace v. Perry, 197 Mo. 550; Long v. Timms, 107 Mo. 519; Drake v. Crane, 127 Mo. 85; Wisker v. Rische, 167 Mo. 528; Norcum v. D'Oench, 17 Mo. 98; Underwood v. Cave, 176 Mo. 1; Harbison v. James, 90 Mo. 431; Gannon v. Pank, 200 Mo. 75; Burford v. Aldridge, 165 Mo. 419; Waterman v. Baldwin, 68 Iowa, 255; Hall v. Preble, 68 Me. 100; Richardson v. Richardson, 80 Me. 585; Perry on Trusts (5 Ed.), sec. 768; R. S. 1899, sec. 4650. (3) The power to "dispose of" property in which the donee has a life estate, includes the power to mortgage. Grace v. Perry, 197 Mo. 550; Gannon v. Pank, 200 Mo. 75; Waterman v. Baldwin, 68 Iowa, 255; Steifel v. Clark, 9 Baxt. (Tenn.) 466; Watson v. James, 15 La. Ann. 386; 22 Thomp. Ency. Law, 1156, par.3. (4) In construing the language of a will, courts must look to the circumstances surrounding the testator at the time of its execution, and all of the provisions of the will should be read together. Underwood v. Cave, 176 Mo. 1; Grace v. Perry, 197 Mo. 559; Long v. Timms, 107 Mo. 519; McMillan v. Fanow, 141 Mo. 55; Shumate v. Bailey, 110 Mo. 415; Noe v. Kern, 93 Mo. 373; Hall v. Stephens, 65 Mo.

677; Clotilde v. Lutz, 157 Mo. 439; Roberds v. Brown, 167 Mo. 447; Small v. Field, 102 Mo. 121.

BROWN, J.—Action for partition of three town lots in the city of Perryville, Missouri. From a judgment of the circuit court denying partition of one of said lots, plaintiffs appeal.

One Henry Hooss died in 1868, seized of real estate estimated to be worth six to eight thousand dollars, and owing debts aggregating about four thousand dollars. He was survived by his wife, Barbara Hooss, who died in 1905. Mr. Hooss was also survived by eight children. One of them, Magdalena Dewein, a daughter, died in 1901, and the plaintiffs herein are her children. Defendants are the other seven children of said Henry Hooss, deceased.

The main issue in this action hangs upon the power or lack of power on the part of Barbara Hooss, devisee and executrix under the will of Henry Hooss, to encumber by deed of trust one of the town lots owned by deceased in Perryville.

The will is as follows:

"First, It is my will and desire that all of my legal debts be paid by my hereinafter named executrix, without having them classed and allowed in court, unless said executrix should not be satisfied of the correctness of such demands. In such case she may require the same to be proven.

"Secondly, I hereby authorize and empower my said executrix to sell such property as she may deem best, either personal property or real estate, for the purpose of raising the necessary means to pay off my indebtedness, and to sell the same either private or public, on such terms and at such time as she may select, without orders of court, and she shall not be required to give bond as such executrix or to render accounts to the court having jurisdiction unless she shall so desire it.

"Third, I hereby will and bequeath unto each of my children, namely, Thomas, Magdalena, Barbara, John, Marie Louisa, Henry William, Louis Phillip and Chas. A. Hooss, each the sum of $1 to be paid to them by my hereinafter named executrix as soon after my decease as the means thereto can be provided for, and to those who shall be under age as soon as they shall arrive at the proper age.

"Fourth, I hereby will and bequeath the rest and residue of my estate, both real and personal and mixed, unto my beloved wife Barbara Hooss, and to her use and benefit during her natural life, giving and granting her full power and absolute authority to dispose of all or so much as she desires and as may be necessary to provide for her and the children during her life, and at her death it is my will and wish that the remainder or residue, if any there be, be divided in equal shares among all my children, share and share alike. The foregoing provision is to be so construed as to give her absolute title to and in the whole of my estate, real, personal and mixed, to enable her to dispose of the same at her option, and that she may make a good title to the purchaser or purchasers.

"Lastly, I hereby appoint my said beloved wife Barbara a sole executrix of this, my last will and testament, hereby revoking all former will or wills by me made."

Within a few years after the death of Henry Hooss his widow, who was named as the sole executrix in the will, sold all the real estate of testator except the three town lots, which plaintiffs now ask to partition; and from the proceeds of said sales and the sale of some personal property, she paid all the debts of her husband except $1434 due one Maurus Biehle. To this man Biehle she executed a deed of trust on lot No. 64, together with a hotel situated thereon, in the city of Perryville. At the time of the testator's death, this hotel was occupied by himself and wife,

the executrix herein, as their home.  Some of the wit-
nesses testified that this hotel lot was not worth more
than $2000 at the date of testator's death in 1868,
while others thought it was worth $5000 at that date.
All of such evidence was necessarily unsatisfactory,
on account of the great lapse of time intervening be-
tween the date of the values they undertook to fix and
the date of the trial.

When the deed of trust to Biehle became due, the
executrix borrowed money from another party, and
gave another deed of trust on the hotel lot to secure
same; and later, to-wit, on December 22, 1879, she bor-
rowed from her son John Hooss and her son-in-law,
John Huber, $1852.32 with which to redeem the said
lot from the last mentioned deed of trust; and she
thereupon executed a new deed of trust to her said
son and son-in-law to secure the last named amount.
After executing the deed of trust to her son and son-
in-law, she failed to pay all the interest on the indebt-
edness; so that in 1905, at the time of her death, the
interest had accumulated on the deed of trust to an
amount probably equalling the value of the lot, then
estimated to be worth from six to ten thousand dollars.
Shortly after her death, the last named deed of trust
was foreclosed under a power of sale contained there-
in and the lot purchased at such foreclosure sale by
her son and daughter, John Hooss and Barbara Hu-
ber, defendants herein, who were then the owners of
the debt recited in said deed.

It is not disputed that the debt which these deeds
of trust were given to secure was a bona-fide obliga-
tion of the testator, and that same was duly allowed and
classified against his estate; but said debt grew out
of the testator signing some notes as security for his
son, Thomas Hooss, one of the defendants herein,
which notes said Thomas Hooss failed to pay.  The
trial court found that the defendants John Hooss
and Barbara Huber obtained the title to the hotel lot

Dewein v. Hooss.

by purchase at the above mentioned foreclosure sale, and excluded it from the partition.

None of the defendants except John Hooss and Barbara Huber set up any claim to the hotel lot.

The plaintiffs contend (1) that the will of Henry Hooss did not invest his executrix, Barbara Hooss, with power to mortgage or encumber his lands by deed of trust; and that, therefore, all of the deeds of trust executed by her were void; and (2) that if she did possess power to thus encumber the lands of testator, the last named deed of trust was barred by the Statute of Limitations before it was foreclosed, and that, consequently, no title passed to defendants John Hooss and Barbara Huber by said sale.

Two town lots of testator in Perryville were never mortgaged nor sold by the executrix, and the right of plaintiffs to have those lots partitioned is not controverted.

In an apparent effort to show that the executrix mismanaged the estate, and that she could and ought to have paid off the deed of trust from the rent of the hotel lot or from a sale of other property, plaintiffs have introduced many witnesses and numerous documents showing all of the official acts of said executrix; but being convinced that while the judgment of the executrix, regarding some of her official acts may have been faulty, the record does not disclose anything which the plaintiffs have a right to call in question at this late date. Therefore, we will not encumber this opinion with a detailed statement of all the evidence introduced by defendants. Such additional items as will be necessary to a full understanding of the case will be given in our opinion.

## OPINION.

The first issue which demands our consideration is: Did the will of Henry Hooss invest his widow and executrix, Barbara, with power to encumber the hotel

lot by deed of trust to secure a valid indebtedness of testator? As a general rule, a power of sale in a will does not authorize the party to whom such power is granted to borrow money and encumber the devised property, for the obvious reason that more money can usually be obtained from a sale than by the mere giving of a mortgage, and the execution of a mortgage may and often does result in the ultimate sacrifice of the encumbered property. The case of Dougherty v. Dougherty, 204 Mo. 228, l. c. 234, and authorities there cited, announce this rule of law quite fully.

If Henry Hooss had invested no power of sale in his widow except such as was given her by the second clause of his will, then we would unhesitatingly say that she had no authority to encumber the lands devised to her; but in paragraph 4 of the will, we find the testator grants to her "full power and absolute authority" to dispose of his property, with the added direction that this clause shall be "so construed as to give her absolute title to and in the whole of my estate, real, personal and mixed, to enable her to dispose of the same at her option, and that she may make a good title to the purchaser or purchasers."

With such a clearly expressed intention of the testator Hooss, to allow his widow to treat his lands as her absolute property, with unrestricted power of disposal "at her option," to hold that the widow could not mortgage or encumber the property would be to totally disregard the testator's wishes.

She had already sold all of the real estate which her husband left her, except three town lots. The hotel lot was the only property equipped with a house that would furnish her shelter, and it was but natural that she should cling to that as long as possible; for the use or rental of that lot was the only means in sight out of which she could hope to secure permanent support. It is true there were two other lots undisposed of; but they were not improved in such a man-

ner as to possess a permanent rental value; and there is no satisfactory evidence that she could have sold them at a price that would have enabled her to pay the remainder of her husband's debts.

By encumbering the hotel lot, the widow succeeded in preventing Biehle, who had probated his claim against the estate, from bringing the town lots to a forced sale; and after a few years she induced her son and son-in-law to carry this indebtedness and allow her to obtain her living from the rent of the hotel. As she did not pay all the interest on the indebtedness, this arrangement ultimately resulted in plaintiffs losing their prospective interest in the hotel lot through foreclosure. However, we must not lose sight of the fact that Henry Hooss has informed us by his will that his widow was the chief object of his bounty; and it was his foremost wish that she should be cared for after he should pass away. His children were all grown, or nearly so. Accordingly, he only bequeathed to his children one dollar each, and such residue of his estate, "if any there be," as might not be consumed by his widow for her support during her life. It is true the widow could have sold the hotel in 1868, or soon thereafter, and out of the proceeds, paid the remainder of her husband's debts, which then did not exceed $1500; and the remainder she could have had the undoubted right to devote to the support of herself. The logic of appellants' argument is that she ought to have done that instead of making what they are pleased to call an illegal deed of trust, and thereby indefinitely postponing the payment of the remainder of her husband's debts. The witnesses placed the market value of the hotel lot in 1868 at prices ranging from $2000 to $5000. We think the preponderance of the evidence is that it was not in 1868 worth more than $4000. Had she sold the lot at that price, she would, after paying the debts of

testator, have had about $2500 left to support herself during the remaining thirty-seven years of her life—or less than $75 per year. But by encumbering the property as she did to her son and son-in-law, who did not collect all of the interest, she seems to have received an average of $30 per month, which in the thirty-seven years, yielded her $13,320; and if we subtract from this the sum of $3000 for insurance, repairs and taxes on the hotel lot and the other two lots, we still have $10,320—or more than four times what she would have received had she sold the property instead of encumbering it. These rentals enabled her to live in such degree of comfort as she desired; and we see no reason in the demand of the plaintiffs that she should have impoverished herself by using the rents derived from the hotel lot to pay off the indebtedness or the interest thereon; and thus have saved the property for plaintiffs and her other children.

Under the will, she was only required to preserve for them such property as she might not find it necessary to use or dispose of for her own support. It is true the widow, presumably from the rent of the hotel, saved and had on hand about $1200 at the time of her death in 1905; but the saving of that little fund to meet the prospective sickness, medical bills and exigencies of old age did not indicate any evil intent on her part; particularly since she did not, as far as this record shows, attempt to pass this accumulated fund in derogation of the rights of the plaintiffs.

At the trial, an effort was made by plaintiffs to prove that the executrix did not obtain the full market value of such lands of testator as she did sell. This evidence is insufficient to show that she made any collusive sales, or that she did not act in good faith in making the sales. We think this claim, like the alleged misappropriation of the rents of the hotel lot, is too stale to receive consideration in this suit. All of the parties to this action appear to have resided in

Perryville, and all sales made by the executrix as well as her failure to use the rents of the hotel to pay the interest and principal of the deeds of trust, were known to the plaintiffs; or could have been known to them by the exercise on their part of reasonable diligence. If the widow mismanaged the estate, or failed to properly discharge her duties as executrix, plaintiffs possessed an ample remedy by timely application to the probate court to have her letters testamentary revoked, under the provisions of section 43, Revised Statutes 1879. By remaining silent more than thirty years, they are estopped from assailing the good faith of the executrix, even had the facts warranted them in doing so—which we think they did not.

Going back to the law of the case, we will say that the views herein expressed are sustained by the leading case of Grace v. Perry, 197 Mo. 550. In that case the will construed was as follows: ''All the residue of my estate, personal and mixed, I give and devise equally to my children, James S. Dougherty and Augusta Lucy Dougherty, during their natural lives, respectfully, with remainder to their heirs or his or her heirs of their body, but with full power and authority to each of my said children after their majority to dispose of the absolute estate in fee simple title, and on the death of either the survivor to inherit. But should both my children die without issue of their body, then and in that event my grandnephew, Charles F. Loker, shall inherit all my property.''

Under the title and power of sale conferred by this will, James S. Dougherty, one of the devisees, executed a deed of trust upon his one-half of the land so devised, which deed of trust was duly foreclosed. In holding that the deed of trust and the foreclosure thereunder passed title to the land, BRACE, J., speaking for this court In Banc, said:

''For the defendant it is contended that . . . the power to dispose of the fee to their respective

shares given to the testator's children must be rejected because repugnant to the disposition of the fee by the testator himself to the heirs of the first taker, and in the case of the failure of such heirs to the grandnephew of the testator. This contention cannot be maintained. It must be remembered that the devise is express for life with power to dispose of the fee, and it is a well settled principle of law that a power of disposition added to a life estate is not repugnant to the life estate or to the remainder over. If not exercised it leaves both estates unaffected by it. If exercised, it defeats the remainder in the property disposed of; the remainder being subject to such defeat, as in this case. ·   .   .

"It is next contended that although it be held that James S. Dougherty had power to dispose of the fee simple title to the real estate in question, he had not power to dispose of it by mortgage—that the power of disposal created by the words 'with full power and authority to dispose of the absolute estate in fee simple' should be construed as a power to sell and that a power to sell does not include a power to mortgage. It may be conceded that as a general rule the power to sell does not include a power to mortgage and that the execution of a power by means of a mortgage is a disposition in favor of the donee of the power, and it may be further conceded that if it appeared from the context of the will that it was the intention of the testator that the power granted should be exercised by sale only or for the benefit of others, which is sometimes made manifest by the purpose for which the power of disposal is given and sometimes by the connection in which the word 'dispose' is used, the contention might be maintained. But such is not this case. The grant of power to dispose of here is full and general, to be exercised by the grantees for their own benefit, unhampered as to the mode in which it is to be exercised and not associated with any words

which upon the maxim of *'noscitur a sociis'* or the principle of *ejusdem generis* could be construed to put any limit upon their power. In other words, the power here is general and unlimited as contradistinguished from the particular or limited powers contemplated in the authorities cited in support of this contention.''

It is very seldom that two wills are found containing the same phraseology. The addition or omission of a single word often changes the entire meaning of a power therein granted. A careful reading of the case of Grace v. Perry, supra, and the other authorities there cited, convinces us that where an absolute or fee simple title is devised, with the unrestricted power of disposal in the devisee, then such devisee may encumber by mortgage or deed of trust the property devised to him, notwithstanding the will may contain other provisions to the effect that such of the estate as the devisee may not dispose of shall pass at his death to other persons. In the will of Mr. Hooss now in judgment, we are not required to determine what interest in his lands he intended to vest in his wife, or the limit of her power to dispose of same, because said testator has informed us in the most unambiguous terms that his will shall be so construed as to vest in his widow and executrix, "absolute title to and in the whole" of his property, "to enable her to dispose of the same at her option, and that she may make a good title to the purchaser or purchasers.'' In construing the Hooss will, we are convinced that it confers a broader and more definite power of sale than the power granted by the Dougherty will, in Grace v. Perry, supra, which was construed to embrace a power to encumber, as well as a power of sale. This last named case has never been overruled, or even criticised by the subsequent decisions of this court; but, on the contrary, is quoted with approval in the late case of Tisdale v. Prather, 210 Mo. l. c. 410.

We therefore hold that Barbara Hooss was possessed of the necessary power to make the deed of trust to her son and son-in-law; and that the foreclosure sale under said deed of trust vested the fee simple title to the hotel lot in defendants John Hooss and Barbara Huber.

Having arrived at the conclusion that the executrix had power under the will to encumber the hotel lot, it is unnecessary to consider what homestead rights she may have held in said lot.

It is next contended by plaintiffs' learned counsel that the deed of trust given by Barbara Hooss, executrix, to John Hooss and John Huber, was barred by the Statute of Limitations. The note which this deed of trust was given to secure was dated December 22, 1879, and it is indorsed with the following credits: April 21, 1887, $400; December 13, 1890, $100; January 7, 1893, $400; March 11, 1899, $10; January 14, 1903, $10.

Thomas Hooss, one of the defendants, testified that he made all of the above payments on the note for and at the request of his mother, Barbara Hooss, and that such payments were made on the dates shown by said credits on the note. It appears that Barbara Hooss probably requested Thomas Hooss to make the above payments because she thought the debt was originally incurred by him, through his father signing his notes to Biehle; but be that as it may, there is no controversy about the fact that said payments were made at the request of Barbara Hooss, the maker of the note, and some of them for the expressed purpose of preventing the debt from being barred by the Statute of Limitations; and we therefore hold that the payments had that effect; and that neither the note nor deed of trust was barred at the date of the foreclosure in 1906. Objection was made to the evidence of Thomas Hooss, because Barbara Hooss was dead at the time of the trial. This

point was not briefed by appellants; and it being clear to our minds that said Thomas Hooss was competent to testify to the payments made at the request of the maker of the note, this point is also ruled against appellants.

It follows that the judgment of the circuit court should be affirmed; and that all the costs incurred in the attempt of plaintiffs to establish title to and partition the hotel lot should be taxed against the plaintiffs. It is so ordered. *Kennish, P. J.,* and *Ferriss, J.,* concur.